JOSEPH BRYAN, RICHARD S. BRYAN, ISAAC BRYAN, RICH-
ARD SMITH and JULIANA SMITH, his wife, *against* ABEL
HINMAN.

**MOTION** for a new trial.

Ejectment for one undivided moiety of a certain piece of land in *Southbury*. The cause was tried before the Superior Court, upon the general issue.

On the trial, it was admitted by the defendant, that the plaintiffs were heirs at law of *Joseph Bryan*, who died seised in fee, of the demanded premises. It appeared, that *Juliana Bryan*, the widow of *Joseph*, deceased, afterwards, *Juliana Buckingham*, was administratrix of the estate of the deceased ; that the debts and charges allowed by the court of probate, on the settlement of the estate, exceeded the amount of the personal property of the deceased, the sum of 48*l*. 13*s.* 6*d.* ; that to discharge the amount of such excess, with incidental charges, the court of probate, for the district of *New-Haven*, to whom the settlement of the estate, by law, appertained, on the 6th day of *June*, 1785, granted an order, authorising the administratrix to sell a part of the real estate of the deceased ; which order was of the tenor following, *viz.* " This court. thereupon, order and empower the said administratrix, to sell the half of eighty-six acres of land, at *Woodbury*, appraised at 49*l*. 6*s.* and the three-fourths of one acre at the *Point*, appraised at 6*l*. 10*s.*, at vendue, or private sale, according to her best discretion ; public notice being given at least twenty days before said sale, and to make return of her doings to this court." The land so ordered to be sold, had been previously duly inventoried by the administratrix, and the inventory accepted, and is the same land demanded in the present action. It also appeared, that in the mean time, the administratrix had intermarried with *Gideon Buckingham*, and that, on the 3d day of *September*, 1792, she, jointly with

A purchaser, under an order of sale of real estate, granted by the court of probate, for payment of debts, will acquire a valid title, although the administrator make no return of the proceedings under the order, to the court granting the same. In such case, however, it seems, that the notice prescribed by the order, must be given; and the court may submit the question to the jury, whether, from length of time, and other circumstances, such notice has been given.

One tenant in common, of full age, and under no legal disability, cannot avail himself of the disability of

his fellow commoner, and thereby, protect himself against the effect of the statute limiting the time of entry into lands, &c.

her husband, conveyed the demanded premises to one *Russel Tomlinson*, in fee. In the deed, the authority of the grantors was stated as follows, *viz.* " To all people to whom these premises shall come : Know ye, that *Gideon Buckingham*, and *Juliana Buckingham*, of *Milford*, in *New-Haven* county, said *Juliana* being administratrix upon the estate of *Joseph Bryan*, late of *Milford*, deceased, by virtue of authority to her given, by the court of probate, for the district of *New-Haven*, to dispose of the same, for payment of debts, of said deceased, for the consideration of fifty-one pounds," &c. The other parts of the deed, were in common form ; and no mention was made in the deed of the order of sale, or the authority, under which the grantors acted, except as above recited.

It appeared also, that the defendant's title was regularly derived from *Tomlinson*, and that the defendant, and those under whom he claimed, had been in possession of the premises, ever since the 3d day of *September*, 1792, a period of more than fifteen years, and holding out all others, during that time, and taking the whole rents and profits to themselves ; that one of the plaintiffs, *viz. Juliana Smith*, at the time of the commencement of the present action, which was instituted in *June*, 1810, was a *feme covert ;* and that she was married in the year 1795, while a minor, and that she had, ever since, continued under coverture ; and the defendant had been the proprietor of a moiety of the eighty-six acres of land above mentioned, ever since the 13th day of *March*, 1793.

The defendant claimed, that the plaintiffs had wholly failed to make out a title in themselves ; and contended that the title was in himself, for two reasons ; first, that the proceedings under the order of sale, were substantially good ; and secondly, that he had acquired a title by an adverse possession of more than fifteen years.

The plaintiffs contended, that the proceedings under the order of sale, were invalid ; and that the plaintiffs being coparceners, and one of them, *viz. Juliana Smith*, having been a *feme covert* since the year 1795. and a minor, at the time of her marriage, the title of all the plaintiffs, was, thereby

saved and protected from the operation of the statute of limitations.

The court, in their charge to the jury, instructed them, on the first point, that it was unnecessary, in order to validate a sale under an order of the court of probate, that a return of the sale should be made to the court; that it must be shewn, that notice of the sale, was given, pursuant to the order; but that, the jury might lawfully infer such notice from the length of time which had elapsed, under all the circumstances of the case; and that, if they should find the fact of notice, it would be their duty to return a verdict for the defendant. On the second point, the court instructed the jury, that the right of all the plaintiffs, was saved and protected, by the disability of *Juliana Smith*; although the defendant had held and occupied the demanded premises, for more than fifteen years. The jury returned their verdict for the defendant. The plaintiffs moved for a new trial, on the ground of a misdirection; and the questions of law, arising on such motion, were reserved for the opinion of the nine Judges.

*R. M. Sherman* and *Staples,* in support of the motion.

*N. Smith* and *Denison,* contra.

EDMOND, J. Upon the facts stated in the motion, two questions of law, are presented for the consideration of this Court, *viz.* 1. Whether, by law, it was necessary, in this case, in order to render the sale valid, that a return of the sale, by the administratrix, should be made to the court of probate? and

2. Whether the rights of all the plaintiffs to the demanded premises, are saved and protected, by the disability of *Juliana Smith,* one of the plaintiffs; although the defendant had held and occupied the same, for more than fifteen years?

On the first point, I am of opinion, that such return was not necessary. By the statute, *tit.* 60. *c.* 1. *s.* 22., it is enacted, " that when the debts and charges allowed by the

court of probate, in the settlement of any intestate estate, (or of any testate estate, where sufficient provision is not made by the will of the testator,) shall exceed the personal estate, it shall be lawful for the judges of such courts respectively, to order the sale of so much of the real estate, as shall be sufficient to pay the same, with the incident charges of sale, in such manner as shall appear to them, to be most for the benefit of such estates; which sales shall be good and effectual in law." That the appointment of an administrator, and the settlement of the estate in question, appertained to the judge of probate, who made the appointment, and gave the order of sale, is admitted; and, from the facts stated and admitted in the motion, it appears, that the estate was so circumstanced as to render it lawful and expedient for the judge to exercise the power vested in him, by this section of the law, and to make an order of sale. In what manner the sale shall be made, is left entirely to the discretion of the judge; and when such order is made, it becomes the administrator's duty, to execute it. The order here given, is to sell either at *vendue*, or *private sale*, at his discretion, giving at least twenty day's notice, before the sale, "and to make return of his doings to the court." I consider this order as consisting of two distinct parts, *viz.* an order accompanied with an authority to sell the estate in a particular manner; and enjoining on him, when that order is obeyed, to make return of his doings. The sale, and return of his doings, are distinct duties. It is provided in the 11th section of the statute before cited, "that the court of probate may and shall proceed to call such administrator, &c. to account for and touching the estate of such deceased person, whether intestate or other." And the administrator is bound by the condition of his bond, to make a just and true account of his administration. The obligation on the administrator, to make return of his doings, would have been equally binding, and the power to sell, equally valid, had the words "and make return," &c. been wholly omitted. He must sell in the manner directed, before he can make return, that he has sold. The last clause of the order, is no limitation of the power;

and whenever the power has been duly executed, the statute expressly says, that such sale shall be good and effectual in law. By what authority, then, can it be said, that it shall not be good and effectual in law, until returned, and accepted by the judge of probate?

The law is silent as to the form of the deed or conveyance, to be given by the administrator; but an authority to sell lands, as in this case, implies the power of making a title, pursuant to the known forms of law, in this State, for the conveyance of lands, *viz.* that the instrument shall be signed, sealed, witnessed, acknowledged and recorded. All this has been done; and no sale, or grant of lands, can be accounted valid, without these formalities. What would be the situation of the purchaser, if it were otherwise? He can only examine by what authority the administrator acts, and learn from that, whether he confines himself within the limits of the authority given. He can do no more. He can have no control over the subsequent acts of the administrator. If the administrator neglects to perform his duty, and to make the requisite return, the purchaser would be without remedy, except upon the covenants in his deed; this remedy may be, and often is, of little value; and he cannot avail himself of the surety on the administration bond.

It is objected, that if the title passes to the purchaser, on the execution and delivery of the deed, and a return of the sale is not necessary, to render the sale good and effectual in law, whatever fraud may be practised in the sale, and even, if the administrator should sell for a twentieth part of the value, the heir can have no redress. It may be answered, that the difficulty would be the same, if the administrator should sell fairly, and for the full value, and should neglect or refuse to account for the avails.

But, in my opinion, no danger is to be apprehended, in either case, as the law has provided an adequate remedy. If any fraud has been practised, or any mistake intervened in the proceeding, or the order of sale is not warranted by law, the heir, or party in interest, may appeal within a limited time, and have the fraud or mistake corrected. If this is

neglected, the party is forever concluded. If the judge of probate should err in issuing the order, and the order or sentence of the court be reversed, the purchaser would be defeated of his title, upon the ground, that the law never warranted a sale. The court had no power to make, nor the administrator to execute, the order. The purchaser, in such a case, is subjected to the same inconvenience and hazard, which every one is subject to, who purchases of another, who has no legal right to the land, or valid authority to sell; or who holds under the levy of an execution, and the judgment on which it is issued is afterwards reversed; and no greater.

In the case out of which the motion arises, the plaintiffs were parties in interest; they might, and may yet, if not barred by the statute of limitations, contest the order of sale, and procure a reversal, if erroneous. Until this is done, the authority to sell stands good. The court of probate had jurisdiction, has exercised its powers, and the judgment or sentence, until reversed, is forever conclusive upon those who were parties to, or so far interested in the sentence or order of the court, as to be entitled, by law, to an appeal.

We are, then, to assume it as a fact, in this case, that the judge of probate was warranted, by law, to order the sale; and that the administrator had lawful and good authority to make it, in the manner prescribed. He has made it; and it is declared by the statute, unconditionally, that it should be good and effectual in law.

But suppose the administrator had not strictly pursued his authority, these plaintiffs have had, or may yet have, redress: They may appeal from the order of sale: They may apply to the court of probate, whose duty it is, to call the administrator to account for his doings, and if he refuses to account, they have a remedy on his administration bond: If he renders his account, it may be contested, and an appeal taken. And whenever an appeal is taken, though taken from every sentence, order, or decree of a judge of probate, the court to which the appeal is taken, will go no further back, in their order for a reversal, than to the first error; every previous correct sentence will be affirmed.

Suppose, the return of sale, in the present case, had actually been made and accepted, and an appeal had been taken from the decree of acceptance, on the ground that the administrator had not pursued his authority strictly, and had not made seasonable return, would the court reverse the whole proceedings, and vacate the order to sell, and invalidate the acts performed under it? They certainly would not; provided, it should appear, that the administrator had acted within and pursuant to his powers; notwithstanding, it should appear, that he did not make return of his doings within the time limited by the judge.

If the preceding remarks are just, it is evident, that so far from a failure of justice, in consequence of a decision in favour of the validity of the sale, in the present case, such a decision will be in furtherance of justice, by facilitating settlements, and securing the quiet enjoyment of estates purchased under sales by order of courts of probate. I may add, that with us, the settlement of intestate estates is regulated entirely by statute. Probate courts are constituted with ample powers, and exclusive jurisdiction. No other court can settle an estate, or make a distribution. Their decisions are final and conclusive, in every case within their jurisdiction, between the parties in interest. Their errors can only be corrected, by an appeal to the Superior Court, within the time limited by law. If an error is committed, that only is corrected; and the court then proceed to the final settlement of the estate. While the settlement of an estate is thus progressing, where an order of sale has been given, and that order executed, the purchaser having paid the purchase money, received his deed, and taken possession, and no appeal having been taken, to permit a party interested in these proceedings, and who may appeal, if injustice is done, to eject the purchaser, would be manifestly absurd. I am of opinion, therefore, that the charge given to the jury, by the court, on this point, was correct; and that a new trial ought not to be granted.

If I am right, on this point, a discussion of the other question in this case, becomes unnecessary. But as the question is

Nov. 1811.

BRYAN
v.
HINMAN.

presented by the motion, to the court, it may not be improper to observe, that by statute, tit. 97. c. 3. s. 2. it is enacted, " that no person or persons that now have any right or title of entry into any lands, tenements, or hereditaments, within this colony, now withheld from him or them, shall thereinto enter, but within three years after," &c. " and that no person or persons shall, at any time hereafter, make entry into any lands, tenements, or hereditaments, within this colony, but within fifteen years next after his or their right or title, which shall hereafter first descend or accrue to the same ; and in default thereof, such persons so not entering, and their heirs, shall be utterly excluded and debarred from such entry after to be made." To this statute, is annexed a proviso, in favour of such as are minors, *femes covert, non compos mentis,* imprisoned, &c.

This statute makes no distinction in relation to the title, or the tenure by which lands are held. Every person not within the proviso, whatever his right or title may be, who shall not make entry within fifteen years, next after his right or title accrues, is utterly excluded. The proviso in this statute, saves the right of *Juliana.* The reason of the proviso, is perfectly obvious. It would be manifestly unjust, to deprive any person or persons of their rights, while they are under a natural or legal disability to exercise them ; and it is equally obvious, that every other person ought to be placed on an equal footing, in relation to their rights.

Our statutes for regulating descents, and the settlement and distribution of estates, seem to have contemplated, that all the heirs to an intestate estate, be considered as tenants in common, until a distribution takes place, and then the quantity of interest of each to be held in severalty, in equal or unequal shares, according to the circumstances, resulting from any advancements to children, by way of portion or settlement, in the life time of the deceased. The only mention of coparceners, is in the case where the children are all daughters. In that case, it is said, they shall inherit as coparceners. This clause in the statute, made part of the 12th section of the act, entitled, " an act for the

settlement of testate and intestate estates." At the time when that section was passed, the oldest surviving son, where there was no issue of the first born, or any older son, was entitled to a double portion ; and, it appears rather to have been introduced for the purpose of ascertaining the proportion, where the children were all daughters, than to designate the nature of the tenure, by which they were to hold the estate. It seems, that where the children are all daughters, the estate was to be distributed to them, in severalty, in the same manner as estates are distributed to sons ; and such, I believe, has always been the practical construction. Conformable to this idea, in actions of ejectment, or, as it may with more propriety be said, in our actions of disseisin, which are somewhat peculiar to ourselves, our courts have permitted one tenant in common, jointenant, or coparcener, to bring his action without joining the others, in order to be let into the estate ; and summons and severance has never been considered necessary, where the other jointenant, tenant in common, or coparcener, neglects or refuses to join. In this way, they can suffer no delay in coming at their respective rights, by the minority, or disability of others, or by their refusal to join. Whether such a procedure was originally correct, having been introduced and sustained, by a long course of judicial proceedings, I do not feel myself at liberty, at this time, to question. Considering these principles, then, as settled, it follows that coparceners, who are adults, and under no legal disability, are neither within the letter nor equity of the proviso in the act limiting the right of entry ; and as they can receive no injury, except, what may arise from their own neglect, and is common to every one, no reason exists, why the disability of one jointenant, or coparcener, should protect the right of another under no legal disability whatever.

From this view of the subject, I am of opinion, that the court mistook the law, upon this point, in their charge to the jury.

Mitchell, Ch. J. Reeve, Swift, Smith, Brainard, Baldwin and Ingersoll, Js. concurred in this opinion.

TRUMBULL, J.   *From the first of my practice, at the bar,* it had been considered as settled law, that the disability of one coheir saved the rights of all, and that they are to be viewed as coparceners.

On this point I hesitated as to a concurrence with the majority of the court, though I fully agreed with them as to the validity of the sale, which alone was sufficient to decide the cause.

But on a more full consideration of the point, and attention to the expressions of our statute, I am of opinion, that the *English* rule is grounded on these reasons only : that coparceners are but one heir, that the *parol* shall demur, during the minority of either, and that they cannot sue severally. The first reason is merely the result of feudal principles ; and the other we have not adopted ; for we have allowed coheirs to maintain separate actions to recover their several shares in land. Though the original tenure of our lands was in gavelkind, in which the heirs take as coparceners ; the manner of descent was early settled, and has been wholly regulated by our statutes.

On adverting to our statute of distributions, I am of opinion, that coheirs under it, cannot, in any sense, be considered as holding their portions of real estate, any more than of personal, in coparcenary, whenever one of them is a male heir ; and although the statute enacts, that where there is no son, the daughters shall inherit as coparceners, I think it would be a forced and unnatural construction, to hold that single expression sufficient to change the nature of their estate, and the mode of its tenure. It is holden, that on the decease of an intestate, his real estate vests at law, in his heirs, though the title of each individual is liable to be devested by insolvency, sale to pay debts, or distribution to others ; and I can perceive no reason, why it is not equally liable to be devested, by an adverse possession for more than fifteen years, against an adult.

For these reasons, I now concur in the opinion of the Court, on both points.

New trial not to be granted