In the Matter of the Estate of Anton Bussman, Deceased.

Peter W. Van Peyma and Others, Appellants; Regina Bussman, as Administratrix de Bonis Non of Anton Bussman, Deceased, Respondent.

Fourth Department, April 30, 1919.

Executors and administrators — proceeding by administratrix de bonis non to compel accounting of administration of deceased administrator — allowance for moneys spent by deceased administrator for improving and repairing real estate — said expenditures not ratified by infant by taking share of proceeds on partition sale — widow charged with check drawn by administrator payable to and indorsed by her but not paid — liability of administrator for profits made in dealing with property of the estate.

In a proceeding by an administratrix de bonis non to compel an accounting of the administration of the original administrator, now deceased, held that moneys spent by the deceased administrator for improving and repairing the real estate left by the intestate cannot be allowed on said account.

A son of the decedent who was an infant during all of the time that said expenditure was made cannot be said to have ratified the same by taking his share of the proceeds of a partition sale.

The widow of the decedent should be charged, however, with a check drawn by the administrator payable to her order and indorsed by her which she admits, but claims she did not receive the money on.

The account of the deceased administrator should be charged, under the rule which forbids trustees to make a profit in dealing with property of

the trust, with a profit made in transferring to himself shares of stock and selling the same for more than the appraised value, since it appears that he was not the only distributee, and that there was a widow and infant, neither of whom had knowledge of the transfer to said administrator, personally, until after his death.

APPEAL by Peter W. Van Peyma and others from a decree of the Surrogate's Court of the county of Erie, entered in the office of said Surrogate's Court on the 27th day of June, 1918, with notice of intention to bring up 'for review two other decrees.

*Loomis & Gibbs* [*Frank M. Loomis* of counsel], for the appellants Peter Van Peyma and Jacob J. Lang.

*Dilworth M. Silver,* for the respondent.

KRUSE, P. J.:

This is a proceeding by an administratrix *de bonis non* to compel an accounting of the administration of the original administrator, now deceased. The matter comes here for the second time. The decree was reversed on the first appeal and the matter remitted to the Surrogate's Court. (182 App. Div. 335.) It was thought that additional evidence might be available respecting the matters in controversy, but none of importance has been added to what is contained in the record on the first appeal. This appeal was heard upon the records on both appeals and we have re-examined the questions presented by these appeals.

There are but two matters involved in the accounting which require discussion. One is whether the moneys spent by the deceased administrator for improving and repairing the real estate left by the intestate, should be allowed upon this accounting, and the other, whether his account should be charged with the profit he made in transferring to himself 100 shares of Buffalo-German Insurance Company stock and selling the same for more than the appraised value.

Anton Bussman, over whose property this controversy arises, died in June, 1898, intestate. His property consisted of about $20,000 personal property and real estate valued at about $6,000 or $7,000. He left a widow and two sons, Paul F. and Anton. Paul was appointed administrator in July, 1898.

Anton was then five years of age. Paul died in December, 1912, before Anton became of age. He never made any account of his receipts and disbursements to any one, so far as the record discloses. Paul's widow and his father's widow are sisters. The relations of all concerned seem to have been friendly up to the time of the death of Paul, but not so friendly since then. The year following the death of Paul an action in partition was brought and the real property sold, and the proceeds distributed.

Very likely an adjustment might have been made respecting the rents and the disbursements for improvements in the partition action. (*Ford* v. *Knapp*, 102 N. Y. 135; *Cosgriff* v. *Foss*, 152 id. 104; Code Civ. Proc. §§ 1546, 1589.) But that seems not to have been done. However, with that question we need not concern ourselves. The question here is whether that can and should be done in this proceeding. I am of the opinion that upon the evidence contained in the records it cannot be done with justice to the parties.

There is no satisfactory evidence to show what moneys of the estate were used in making improvements and repairs, and what went into enterprises such as the Washington Land Company and Elmhurst Hotel Company, which concededly resulted in losses. There is some evidence of disbursements, but whether it was the money of the estate, or the money of the administrator, is not clear, nor does it appear how much was used for permanent improvements and how much for repairs.

So there is no way of adjusting the amounts chargeable to the heirs and widow respectively, she having only her dower interest. Furthermore, the son Anton was an infant during all the time that the expenditure was made, and the claim which is now made, that he ratified what was done in the way of making repairs and betterments to the property by taking his share of the proceeds on the partition sale, I think, cannot be sustained.

There is, however, one item which I think should be charged to the widow. It appears that a check drawn by Paul F. Bussman as administrator for $1,000 payable to the order of the widow and indorsed by her, which she admits, but claims that she did not receive the money. She says that

Paul told her that he wanted to use it for the house. Paul's son at first testified that it was so used, but afterward he corrected his testimony by saying that he had no personal knowledge of its use. I think this may be regarded as a payment to her, irrespective of what the funds were used for. Concededly it was a check payable out of the funds of the estate; it was payable to her order; she indorsed the check. If she saw fit to let the administrator use the check outside of his trust, the loss should fall upon her and not upon the sureties.

As regards the profits upon the sale of the stock, it is claimed that the administrator, being one of the distributees, could take the stock and allow therefor what it was worth at that time and apply it upon his distributive share. I think the circumstances here are quite unlike *Matter of Mullon* (145 N. Y. 98), upon which the appellants rely. There the executor was also the sole residuary legatee. He had advertised for claims and paid all claims presented and applied the remaining assets to his own use, acting in good faith, though he had not accounted in the Surrogate's Court. It was held that a creditor whose claim had not been barred by the Statute of Limitations was not precluded by a mere omission to present his claim, from establishing his debt and demanding an accounting at any time before the executor or administrator was formally discharged from his trust, but that the executor could only be held accountable for the actual value of the assets so applied to his own use and he could not be charged with the profits of a business in which he had put the assets.

Here the administrator was not the only distributee; there was a widow and an infant, neither of whom had knowledge of the transfer of the stock to the administrator personally until after his death. At least there is no evidence of any such knowledge. I think under the general rule which forbids trustees to make a profit in dealing with property of the trust, the administrator's account should be charged with the profits.

A mistake, however, should be corrected. It was stated in the memorandum written on the former appeal that the stock was appraised at $4,000 and sold for $6,850, making

Fourth Department, May, 1919.              [Vol. 187.

a profit of $2,850. I think this statement was not quite accurate. It seems that while the stock was sold for $6,850, there was a brokerage charge of $68.50. This amount should be deducted from the $2,850, and the account only charged with the difference, and also credited with the $1,000 check.

The decree should be modified accordingly, and as so modified affirmed, without costs upon this appeal to any party as against the other.

All concurred.

Decree modified in accordance with the opinion and as so modified affirmed, without costs of this appeal to either party.