SAM SCHWARTZ, ADMINISTRATOR, *vs.* HERMAN
SCHWARTZ ET AL.

Third Judicial District, New Haven, January Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

The distributees of an estate consisting of cash are strictly entitled to payment of their respective shares in legal tender, but they may agree with the administrator upon any other mutually satisfactory plan and he is entitled to credit himself with payments made in accordance with it.

Although the relationship between an administrator and the heirs-at-law of an estate is one of trust, a contract made between them is not thereby rendered void; it is, at most, voidable and then only if a want of equity and fair dealing appears in the transaction.

Reasonably prompt assertion of the remedy is a condition precedent to the exercise of a right to rescind a contract.

In the present case, the plaintiff was the administrator of an estate of which the defendants, his nephew and niece, were the heirs-at-law. In 1920, when he held a balance in cash ready for distribution, the defendants were desirous of entering the retail automobile and bicycle business, in which the plaintiff was already engaged, and a contract was executed whereby he agreed

to open and furnish a branch store, place the defendants in the management thereof, consign to them a quantity of goods and to extend them further credits, and pay them stated salaries and share with them the profits of the enterprise; and it was also agreed that the plaintiff should retain their respective shares in the estate as a guaranty against losses which he might suffer under the contract. This arrangement was carried out, and the defendants executed receipts in which they acknowledged full payment of their distributive shares; but the business was unsuccessful, and in June, 1923, when the plaintiff filed his final account, the defendants objected to those items in which he credited himself with full payment of their shares. The Court of Probate sustained these objections, but its ruling was reversed by the Superior Court upon appeal. *Held:*

1. That the Superior Court did not err.
2. That, under all the circumstances, the contract was fair and equitable and did not constitute an abuse of the trust relationship existing between the parties; and that the method adopted by them for the distribution of the defendants' shares was open to no valid objection.
3. That, if the defendants had been entitled to rescind the contract, they had, as a matter of law, lost their rights by continuing in its performance for more than three years without objection.
4. That the question whether the defendants had any cause of action in their favor arising out of the contract could not be considered upon an appeal from probate.

Argued January 20th—decided March 4th, 1926.

APPEAL from an order and decree of the Court of Probate for the district of New Haven correcting, and allowing as corrected, an administration account, taken to the Superior Court in New Haven County and tried to the court, *Wolfe, J.;* judgment rendered reversing the action of the Court of Probate, and appeal by the heirs-at-law. *No error.*

*Louis Feinmark,* for the appellants (defendants).

*Harry L. Brooks,* with whom, on the brief, was *Charles L. Brooks,* for the appellee (plaintiff).

MALTBIE, J. This is an appeal by the defendants, heirs-at-law of the decedent, from the allowance of the

Schwartz *v.* Schwartz.

appellee's final account as administrator, the issues centering upon the items wherein he credits himself as having paid to them their distributive shares, to one $1,990.45 and to the other $1,990.46. The trial court finds that the administrator paid to one of them $490.45 and to the other $490.46, and this finding is not attacked in the appeal. In the case of each, the remaining $1,500 of the amount due was not paid in cash, but by checks, the proceeds of which went into the personal account of the appellee. One of these checks, for $1,000, was, on March 5th, 1920, drawn by the appellee as administrator and made payable to himself, upon an understanding with the appellants that the money would be applied toward their interest in a store, for the purchase of which they were negotiating with the appellee, and that one half would be charged against the distributive share of each in the estate; the other two checks, each for $1,000, were, on August 6th, 1920, drawn by him in the same capacity, payable one to each of the appellants, and were indorsed by them to him, upon a similar understanding. The circumstances of the making of the checks were these: The appellee was in the automobile and bicycle business and contemplated opening a branch store on certain leased premises, which it was supposed would be ready for occupancy on March 1st, 1920. The appellants wanted to embark in business for themselves, and to purchase an interest in this store. When the first check was drawn, the parties had reached a general understanding in the matter, it being agreed that the appellants would purchase an interest in the store and occupy it when it was ready. It was not in fact made ready until August 6th, 1920, when the two other checks were made. Some time later, the appellants actually took possession, but, though various attempts were made to reach a definite agreement,

none were successful until March, 1921, and it was not until April 5th, 1921, that an agreement was executed by the parties.

This agreement provided that the appellants were to have possession of the business as managers until May 1st, 1923, the active management to be in the hands of Robert Davis, husband of appellant Elsie Davis, and appellant Herman Schwartz; the goods in the store were consigned to them at an agreed valuation of about $15,000, and the appellee was, up to that amount, to consign further goods to them, when requested, at a price determined by their cost to him, with an addition of five or seven per cent. according to their nature; the appellants were to pay the expenses of operating the business, were to be responsible for all credits extended, and were to reimburse the appellee for any losses; the $3,000 which had been received by him was to serve as a guaranty to him for the reimbursement of losses, and at the expiration of the agreement, was to be returned, except as such losses were deducted; should farther sums be due the appellants when the estate was settled, these, too, were to be paid over to the appellee, "reducing the interest of the said Samuel Schwartz in the business herein by the amount so paid to him;" Robert Davis and Herman Schwartz were given a weekly salary of $40 and $35, respectively, except that the appellee, if necessary to preserve his interest and if the business did not warrant such payments, might reduce the amounts; if the business should show a net profit of not less than $4,800 for the fiscal year ending January 31st, 1922, the appellants were to receive a bonus of $851.07; if either Robert Davis or Herman Schwartz ceased his active connection with the business, an accounting was to be made to determine whether there had been losses, and if so, the amount to be deducted from the guaranty

before its return; at the expiration of the contracts, the appellants had a thirty-day option within which to purchase the business, the price to be the cost of fixtures, less a certain depreciation, plus the amount of the then existing indebtedness owing by them to the appellee for goods consigned.

When this agreement was executed, each of the appellants gave to the appellee a receipt acknowledging that $1,500 had been received from him as administrator upon each of their distributive shares. Later, on receiving in cash the balance of that share, each executed to the surety upon the administrator's bond a release of all liability. After they had been conducting the store a few months, Elsie Davis requested the appellee to get Herman Schwartz out of the business, and this the appellee did, agreeing with him as to an amount to be deducted from the $1,500 guaranty on account of losses, settling the balance with him, and receiving an acknowledgment from him of the receipt of his full distributive share in the estate. Elsie Davis and her husband continued in the store about a year thereafter, when they, too, left because of a disagreement between the appellee and Davis as to his manner of conducting the business. The appellee was forced to retake possession of the store. During the time Elsie Davis was in control of the business large losses occurred. Neither she nor Herman Schwartz has ever asked an accounting under the terms of the contract.

There was no intrinsic illegality in the manner in which the appellee discharged his obligation to distribute to the appellants their respective shares in the estate. If, as apparently was the case, he held the balance for distribution in the form of cash, they might no doubt have insisted upon its payment to them in legal tender. But they might also agree with him upon some mutually satisfactory substitute plan, and, hav-

ing done so, he is entitled to credit himself with payments made in accordance with it. *Ryle* v. *Reedy,* 99 Conn. 174, 176, 121 Atl. 460; *Merwin's Appeal,* 75 Conn. 33, 35, 52 Atl. 484; *Collier* v. *Collier,* 137 Ga. 658, 74 S. E. 275; *Wilson* v. *Randall,* 37 Ala. 74; *In re Bussman Estate,* 187 App. Div. 574, 577, 176 N. Y. Supp. 505, 507; 24 Corpus Juris, 484.

By the terms of the contract, the appellants were placed immediately in control of a going business, with the means of keeping up their stock upon the credit of the appellee at a minimum cost in the way of interest charges; if they did not see fit finally to purchase the business, they were at least assured of compensation for their services, with the opportunity to earn a substantial bonus if they were successful; if they decided to purchase, they could do so, and it is clearly implied in the contract that the price would be determined, aside from the cost of the fixtures in the store, by deducting from the amounts charged against them for goods consigned either at the time they took possession of the store or later, all sums which the appellee had received from the business; in other words, that they would have the benefit of any profits earned by them in the conduct of the business; on the other hand, their sole liability was to make good any losses he suffered from the business, the $3,000 in his hands serving merely to secure to him the performance of that obligation. It is difficult to see how, with the capital they had, they could otherwise have obtained so favorable an opportunity to embark in business and secure a well-stocked store for themselves. Nor can it be charged that the appellee was to secure an improper advantage; he merely assured himself against loss from their conduct of the business, made a very reasonable charge to them for his services in furnishing their stock in trade and giving to them the benefit of his credit;

and was to have the profits, except perhaps the amount of the bonus, if they did not buy the store. There is nothing in this contract which could justify a claim that it was in itself illegal or invalid.

The appellants claim, however, that the contract was rendered void by the relationship of the parties. They misapprehend our law. The appellee as administrator no doubt occupied toward them a position analogous to that of trustee; *Hall* v. *Meriden Trust & Safe Deposit Co.,* 103 Conn. 226, 233, 130 Atl. 157; but that relationship would not make void the contract between them; it would be voidable if a want of equity and fair dealing appeared in the transaction. *State* v. *Culhane,* 78 Conn. 622, 628, 63 Atl. 636; *Bronson* v. *Thompson,* 77 Conn. 214, 218, 58 Atl. 692. In this connection, certain requests to correct the finding become pertinent; one we grant, to import into the record the fact that on March 5th, 1920, when the appellant Herman Schwartz lacked thirteen days of his majority, appellant Elsie Davis was about twenty-two and one half years old; the others are not well grounded, either because they are immaterial, or the evidence was conflicting, or they are supported only by the testimony of the appellants, whose evidence in all its essential particulars the trial court patently disbelieved. The appellee was administrator upon the estate of which they were the heirs-at-law; he was their uncle; he was experienced in business and they were young and inexperienced. Beyond question he was bound to the utmost fair dealing toward them. But there is no suggestion that he urged them into the enterprise or misrepresented the situation to them; they had been in charge of the store some time before the contract was executed and in a position to learn of its prospects and possibilities; Elsie Davis had at hand the advice and guidance of her husband; and the

appellants did not abandon the business because they felt that the appellee had not dealt fairly with them, nor even upon their own initiative. The appellee did secure the money in question before any precise agreement had been reached, but not before it had been definitely decided that in some form or other the appellants were to have an interest in the store, and any impropriety in his conduct in that regard was cured and his possession of the money clearly ratified when the agreement was finally reached; moreover, the record suggests that when those sums were paid, an acquisition of an immediate interest in the business itself was in the minds of the parties. The business was not succesful, but that is as easily explainable upon the theory that the appellants lacked experience and ability as that there was any inherent improbability of its success, or any expectation on the appellee's part that it would fail; he had in fact contemplated establishing the store for his own benefit. That the hopes of a profitable venture they all entertained failed to materialize is no reason for holding that there was any inequity or want of fairness upon the appellee's part.

Moreover, to take advantage of any right to avoid a contract, the appellants were obligated to act with reasonable promptness. *Potter's Appeal,* 56 Conn. 1, 17, 12 Atl. 513. The appellants took possession of the store at some time before March, 1921; they continued in control of it for some months, Elsie Davis for more than a year; the appellee was instrumental in getting both of them out of the business, and he made a settlement with Herman Schwartz, the proceeds of which have never been returned or tendered back; they incurred large losses in their conduct of the business, which the appellee may have to bear in whole or in part; yet not until June, 1923, when the administrator

presented his final account for allowance, did they question in any way the legality of the appellee's dealings with them.  Under such circumstances, the conclusion follows as matter of law that they did not act with reasonable promptness in their efforts to disaffirm the transaction.  *Goldberg* v. *Krayeske,* 102 Conn. 137, 141, 128 Atl. 27.

The particulars of the transaction wherein the appellee settled with Herman Schwartz on his withdrawal from the business are of no consequence in this action; though the latter then gave a receipt as for a balance of the distributive share due him, this does not alter the fact that the $1,500 of that share here in question had already been taken from the estate under circumstances entitling the administrator to credit himself with it in his administration account, and any obligation the latter thereafter owed as to it was personal in its nature.  The appellee as administrator has discharged his duty to the appellants by disbursing their distributive shares in the estate in accordance with their voluntary agreement and in a manner which was not in itself illegal and which they cannot disaffirm. We cannot in this appeal from probate consider whether the appellants have any action under or growing out of the contract.  *Hewitt's Appeal,* 53 Conn. 24, 37, 1 Atl. 815; *Haven's Appeal,* 69 Conn. 684, 701, 38 Atl. 795; *Mallory's Appeal,* 62 Conn. 218, 223, 25 Atl. 109; *Cone's Appeal,* 68 Conn. 84, 90, 35 Atl. 731.

There is no error.

In this opinion the other judges concurred.