MARGARET R. SATTI *v.* FRANCIS J. RAGO,
ADMINISTRATOR (ESTATE OF MARY W. RAGO), ET AL.

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, Js.

Argued December 1, 1981—decision released March 2, 1982

*Joel M. Ellis,* with whom was *George J. Sherman,* for the appellant (defendant).

*A. A. Washton,* with whom, on the brief, was *Peter W. Rotella,* for the appellee (plaintiff).

PARSKEY, J. This is an appeal from a judgment revoking an order of the Probate Court approving a sale of certain real property in the estate of Mary Rago and remanding the case to the Probate Court for the purpose of a resale.[1]

---

[1] The court also ordered the plaintiff to furnish a bond in the amount of $8000, which she has posted. The propriety of this order is not an issue on appeal.

The basic facts are not in dispute. The sole heirs of the Mary W. Rago estate are three children of the decedent, one of whom, the named defendant Francis J. Rago, is the administrator of the estate and one of whom, Margaret R. Satti, is the plaintiff. The assets of the estate included two pieces of real property. One piece was located on Harwich Street in Hartford. It was distributed to the heirs, who, thereafter, agreed among themselves to sell it to Francis for $6000 less than the inventory value. The other piece, the subject of this appeal, is a cottage located in Waterford on the Connecticut shore. The parties attempted without success to use the cottage jointly. Conflicts arose among them over fair usage, maintenance and responsibility for the property. Francis Rago and Nicholas Rago, the third heir, decided that the property should be sold in order to lessen family tension, avoid the consequences of deterioration and realize a financial return. Francis had the property evaluated by a real estate brokerage firm for the purposes of sale and was notified that a reasonable offering price was between $28,900 and $33,900. He calculated the median in that range to be $31,900, discounted it by a 6 percent real estate commission and offered the property on December 7, 1976, to his brother Nicholas and to the plaintiff for $29,986. Nicholas was not interested in purchasing the cottage.

The plaintiff raised a number of questions relating to the sale of the property and the price, which Francis attempted to answer. When over a period of three months the plaintiff would not give a firm response as to whether she was interested in buying the property at the offered price, Francis placed the property with a real estate agent for the asking price of $34,000. The property remained on the

market from March until June, 1977. The plaintiff saw the "for sale" signs on the property but continued to stall about buying it at the $29,986 price. Her stated reason for refusing to buy the property at the offered price was that she expected a discount equivalent to what Francis had received in his purchase of the Harwich Street property.

In March, 1977, the plaintiff called the Probate Court and told the clerk, Dorothy Clark, that she was living at 87 Moore Street in Providence, Rhode Island and requested that all notices from the court be sent to that address. This request was reduced to writing on a piece of paper and stapled to the file of the estate of Mary Rago. The paper contained the following typewritten information: "3-3-77 Change of Address Mary R. Satti, 87 Moore Street, Providence, Rhode Island, 02907." In the lower right-hand corner are the initials "dc". Several letters were sent to the plaintiff at that address from the Probate Court. One of these was postmarked March 3, 1977.

No offers from potential purchasers were received for the shore property between March and June, 1977. This was significant to the administrator because those months were the best selling period for shore property. In June, 1977, Margaret M. O'Briant, Francis' stepdaughter, indicated she was interested in purchasing the property and was willing to pay the inventory value of $30,000. Francis thereupon applied to the Probate Court for permission to sell the property at that price to Margaret O'Briant and her husband John. When the application was filed, the administrator, through his attorney,[2] did not reveal that the interested pur-

---

[2] We note that the defendant's counsel on appeal did not represent him before the Probate Court.

chaser was his stepdaughter. His attorney was asked "whether the sale was to a relative," to which he responded that "it was not a blood relative" and the assistant clerk of the Probate Court did not pursue the matter further. Had the clerk been informed that the purchaser was a stepdaughter of the administrator, she would have given notice by mail to all the heirs. As it was, notice of the hearing on the application for sale was given to the administrator and to his attorney by letter, and was given to the other heirs, including the plaintiff, by publication in the Hartford Courant. The plaintiff did not see the publication or receive any actual notice of the pending application.

The application was approved by the Probate Court on July 11, 1977. The O'Briants obtained a bank mortgage for $28,000 and the sale was consummated on July 21, 1977. Thereafter the O'Briants spent substantial sums of money in repairing and renovating the cottage.

The trial court found that (1) because of a failure to disclose the relationship between the administrator and the prospective purchaser, the plaintiff did not receive the notice of the application for sale which she would have otherwise received and (2) because of the administrator's failure to discharge his fiduciary obligation by notifying the plaintiff of the pending application in view of his previous communications with the plaintiff respecting this property, the plaintiff was deprived of an opportunity to bid on the property which she might otherwise have had. The trial court found that the Probate Court had not given the plaintiff the "proper notice" required by General Statutes § 45-33 but in view of the plaintiff's opportunity to litigate fully

before the Superior Court the issues of the sale, such defect in procedure was not harmful. The court concluded that under those circumstances a sale of the subject property to the O'Briants for $30,000 may not be in the "best interests of the parties." The court established as conditions for the revocation of the probate order of sale that the plaintiff submit a bid in excess of $30,000 accompanied by a $3000 deposit and a cash or surety bond for $8000 to cover any claim by the O'Briants against the estate for the value of improvements made to the subject property during their occupancy. Both conditions having been met, the court, thereafter, revoked the probate order of sale and remanded the case to the Probate Court with direction to order another sale upon the giving of proper notice to all interested parties.

The defendant administrator asserts that the trial court erred (1) in considering the sales price for the subject property in an appeal from probate under an allegation in the reasons of appeal that the sale was not in the "best interests of the parties," (2) in considering whether and in concluding that the plaintiff should have an opportunity to bid on the subject property, and (3) in concluding that a sale of the subject property to the administrator's stepdaughter for $30,000 was not in the best interests of the parties.

"The appeal taken by the plaintiff from the order and decree of the Probate Court was purely statutory. General Statutes § 45-288; *Sacksell* v. *Barrett*, 132 Conn. 139, 146, 43 A.2d 79 [1945]. The appeal brought before the Superior Court for review only the order appealed from. *Hotchkiss'*

*Appeal,* 89 Conn. 420, 432, 95 A. 26 [1915]; 1 Locke & Kohn, Conn. Probate Practice § 186, p. 382. It did not vacate the order, and that order remained untouched until modified by a judgment in the Superior Court. *Avery's Appeal,* 117 Conn. 201, 205, 167 A. 544 [1933]; *Merrells* v. *Phelps,* 34 Conn. 109, 112 [1867]; *Curtiss* v. *Beardsley,* 15 Conn. 518, 523 [1843]; *Bryan* v. *Hinman,* 5 Day 211, 217 [1811]. It carried the subject matter embraced in it to the Superior Court, sitting as a Probate Court, for a trial de novo. *Beach's Appeal,* 76 Conn. 118, 121, 55 A. 596 [1903]; *Davis' Appeal,* 39 Conn. 395, 401 [1872]. . . . While the Superior Court could, on appeal, review the order of the Probate Court, it could not exercise any greater powers than the Probate Court. *Reiley* v. *Healey,* 122 Conn. 64, 79, 187 A. 661 [1936]; *Dunham* v. *Dunham,* 97 Conn. 440, 443, 117 A. 504 [1922]. And the issues presented for review were those defined in the reasons of appeal. *Berkeley* v. *Berkeley,* 152 Conn. 398, 402, 207 A.2d 579 [1965]; *Boschen* v. *Second National Bank,* 130 Conn. 501, 504, 35 A.2d 849 [1944]; *Williamson's Appeal,* 123 Conn. 424, 427, 196 A. 770 [1937]." *Stevens' Appeal,* 157 Conn. 576, 580–81, 255 A.2d 632 (1969).

Title to real property passes upon death to the heirs of the owner subject to the right of administration. *Lundberg* v. *Kovacs,* 172 Conn. 229, 232n, 374 A.2d 201 (1977); *O'Connor* v. *Chiascione,* 130 Conn. 304, 306, 33 A.2d 336 (1943). The power of the Probate Court to order the sale of such property is special and statutory and the authority must be strictly followed, otherwise the order of sale will be void. *Offredi* v. *Huhla,* 135 Conn. 20, 23, 60 A.2d 779 (1948). Before a sale can be ordered, the court must find that it is in the "best interests of the

parties in interest." General Statutes § 45-238.[3] If the sale is to be private, the court must also find that the price and terms of the sale are in the "best interests of the estate." General Statutes § 45-241.[4] The issues being statutory, the burden is on the proponent, in this case the administrator, to establish in the Probate Court, and in the Superior Court, on appeal, the statutory predicate for the

[3] "[General Statutes, prior to July 1, 1981] Sec. 45-238. SALE OR MORTGAGE OF REAL PROPERTY. (a) Upon the written application of the conservator of the estate of any incapable person, guardian of the estate of any minor, administrator or trustee appointed by the court, including a trustee of a missing person, the executor or trustee under any will admitted to probate by the court or any overseer appointed under the provisions of subsection (f) of section 53a-47, after public notice and other notice which the court may order and after hearing, the court may authorize the sale or mortgage of the whole or any part of, or any easement or other interest in, any real property in this state of any incapable person, minor, missing person, deceased person or trustee, or of any real property the legal title to which has been acquired by such administrator, executor or trustee, if the court finds it would be for the best interests of the parties in interest to grant the application.

"(b) The court may empower the conservator, guardian, administrator, executor, trustee or overseer to execute a conveyance of such property or to execute a note and a mortgage to secure such property upon his first giving a probate bond faithfully to administer and account for the proceeds of the sale or mortgage according to law. The application shall set forth a description of the property to be sold or mortgaged.

"(c) If any person having an interest in such real property is not in being or is not ascertained or is under a disability, the court shall appoint a guardian ad litem to represent the interests of such person at the hearing, unless such person already is represented by a guardian or by a conservator.

"(d) The order and the sale or mortgage under the order shall be conclusive upon all persons then or thereafter existing whose interests have been so represented."

[4] "[General Statutes] Sec. 45-241. PUBLIC OR PRIVATE SALE OF REAL PROPERTY. DISTRIBUTION OF PROCEEDS. (a) The court of probate in ordering a sale under the provisions of sections 45-238, 45-240 to 45-244, inclusive, and 45-271d shall direct whether the sale shall be public or private. If a public sale is directed, the court shall direct the notice thereof which shall be given. If a private sale is

court's order. *Pastir* v. *Bielski,* 174 Conn. 193, 194, 384 A.2d 367 (1978); *D'Agostino* v. *Amarante,* 172 Conn. 529, 530–31, 375 A.2d 1013 (1977); *Crane* v. *Manchester,* 143 Conn. 498, 501, 123 A.2d 752 (1956). The burden remains the same on appeal whether the proponent is the appellant or the appellee and whether or not the opponent, as appellant, asserts in her reasons of appeal the negative of the statutory issue or issues. Ibid. If the proponent seeks a private sale, then he must prove that the price and terms of such sale are in the best interests of the estate, even in the absence of a specific claim to the contrary in the reasons for appeal.

The trial court correctly found that the relationship of the defendant administrator to the plaintiff heir was fiduciary in character. *O'Connor* v. *Chiascione,* supra, 307; *Schwartz* v. *Schwartz,* 104 Conn. 271, 277, 132 A. 461 (1926). Occupying a position toward the plaintiff analogous to that of trustee; *Hall* v. *Meriden Trust & Safe Deposit Co.,* 103 Conn. 226, 233, 130 A. 157 (1925); he owed her a duty of equity and fair dealing in respect to any transaction of mutual concern. *Schwartz* v. *Schwartz,* supra; *State* v. *Culhane,* 78 Conn. 622, 628, 63 A. 636 (1906). Candor and fidelity are the hallmarks of the relationship. Dealing by a fiduciary with a near relative, whether by blood or marriage, is not prohibited but it is a factor to be considered in determining the fairness and good faith of the transaction. *Setaro* v. *Pernigotti,* 105 Conn.

directed, the court may, if it appears to be for the best interests of the estate, determine the price and the terms of the sale, including purchase money mortgage or mortgages, as it considers reasonable and advisable.

"(b) The net proceeds of the sale shall be divided or distributed in the same manner as such real property would have been divided or distributed if it had not been sold."

685, 687, 136 A. 571 (1927).[5] In the absence of actual notice or waiver, disclosure of such relationship by the fiduciary to the Probate Court and interested parties is the necessary predicate to such consideration. The trial court found that the administrator, acting through his attorney, failed to disclose to the Probate Court his relationship to the prospective purchaser when candor would have required such disclosure because the Probate Court in such circumstance would have sent the plaintiff notice of the hearing on the proposed sale. The trial court also found that because the administrator had had a series of discussions with the plaintiff concerning the subject property, fairness obligated him to notify her of the proposed transaction. The trial court's findings in those respects are not clearly erroneous nor is the court's further finding that, as a result of the administrator's failure to discharge those obligations, the plaintiff was deprived of an opportunity to bid on the cottage property. In these circumstances, we need not consider whether the plaintiff's request to the Probate Court satisfied the requirements of General Statutes § 45-33[6] such that that court was thereby obligated to send her a special notice of a hearing on the application for

[5] While it is unnecessary to define specifically the relationships which would require disclosure, a useful guide would be those relationships which would disqualify a judge or juror. See *Dacey* v. *Connecticut Bar Assn.*, 184 Conn. 21, 441 A.2d 49 (1981); *McCarten* v. *Connecticut Co.*, 103 Conn. 537, 542, 131 A. 505 (1925).

[6] "[General Statutes] Sec. 45-33. SPECIAL NOTICE TO BE GIVEN ON WRITTEN REQUEST. (a) Any person who is interested in any estate, trust or other matter pending in any court of probate, or who is interested in any application that may be made to any court of probate for the probating of a will or the granting of administration, may, in person or by attorney, file with the court a written request for special notice to be given to him or his attorney of any application to the court and of any order passed by the court of probate in such estate, trust or other matter. The request shall state the

sale. The administrator's breach of his fiduciary duty was sufficient justification for revocation of the Probate Court order and for remand to that court for a fresh start. Although the trial court arrived at the correct result through a different route, we do not regard such circumstance as significant. *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978).

The administrator correctly contends that in an appeal from probate involving the disposition of real estate, the Superior Court cannot consider events that occurred after the Probate Court hearing; *Thomas* v. *Arafeh,* 174 Conn. 464, 469, 391 A.2d 133 (1978); *Stevens' Appeal,* supra, 582; and therefore the trial court erred in receiving evidence of the plaintiff's current interest in purchasing the subject property. In the present case, however, the significant fact is the plaintiff's loss of a chance to bid on the cottage property when faced with the proposed sale to the O'Briants. The error of admitting evidence of her current interest being irrelevant to the issue of past opportunity lost is, therefore, harmless.

There is no error.

In this opinion the other judges concurred.

---

estate, trust or other matter, cause or proceeding of which notice is desired and the post-office address of the person desiring the notice. Thereupon the court of probate shall give notice to such person or his attorney of any hearing in such estate, trust or other matter at least seven days before the time assigned for the hearing, in whatever manner the court finds to be resonable under the circumstances.

"(b) Any request for a special notice in the matter of probating a will or granting administation, before any application is made therefore, shall be obligatory upon the court for a period of thirty days from the date of filing the same."