session of his property or that left by him. Such possession belongs to his legal representative. Had the fund deposited here by the executrix in her name as executrix been deposited in a bank in Ireland in the same way and under the same form, could the applicant, as administrator of her will probated in Massachusetts, by reason of the fact that she was the executrix or sole legatee under the will of decedent, be deemed the person entitled to the possession of his personal property and so be able to maintain a successful suit in an Irish court for the recovery of the funds deposited? Surely not. The provision on which the petitioner relies was evidently incorporated into section 2697 for the purpose of meeting the cases where, under the laws of the domicile of the testator, no letters testamentary or of administration cum testamento annexo are issued, but the right of possession of the personal estate passes directly to the legatees or beneficiaries under the will.

While I should gladly have reached another conclusion in order to save the applicant further trouble, I am, after careful consideration, constrained to deny the application.

Application denied.

(73 Misc. Rep. 170.)

### In re DOBSON'S ESTATE.

(Surrogate's Court, Oneida County. July, 1911.)

TAXATION (§ 879*)—INHERITANCE TAXES—TRANSFERS SUBJECT TO TAX.

Where one conveyed to her cousin the principal part of her estate, upon the latter's promise to give her certain care and to execute to her free of rent a lease for life of the property conveyed, which lease was executed at the time of the conveyance, and the circumstances of the transaction indicated an intention that the disposition of the property should not take effect till after the grantor's death, the transfer will be held taxable at her death.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

In the matter of the estate of Helena L. Dobson, deceased. Appeal from the report of the transfer tax appraiser, this appeal is taken. Report confirmed.

Colgrove & Baker, for Imogene E. Thomas, one of the executors.
Jones, Townsend & Rudd, for Mary Agnes Young, as administratrix of the estate of William A. Young, deceased.
E. F. Jordan, for State Comptroller.

SEXTON, S. This is an appeal taken by Imogene E. Thomas, one of the executors of the estate of Helena L. Dobson, and also by Mary Agnes Young, as administratrix of the estate of William A. Young, deceased, from the report of the transfer tax appraiser.

On December 30, 1910, an order was signed by the surrogate assessing a tax of $3,953.60 against the estate of Helena L. Dobson, and this appeal is taken from so much thereof as levies an assessment of $3,786 upon the transfer of property of the agreed value of

$75,719.95 to Imogene E. Thomas. For brevity, I will refer to the parties as Dobson and Thomas.

It seems that for some months prior to April 3, 1902, Thomas lived with Dobson, her cousin, and cared for her. Dobson then owned real estate worth about $80,000. On April 3, 1902, a warranty deed, in form, was given by Dobson to Thomas, which provided that said Thomas should execute—

"a valid and sufficient lease of all the hereinbefore described real property, which lease shall be for the term of the natural life of the party of the first part hereto [Dobson], and shall so lease all of said premises to the party of the first part [Dobson], free of all rents."

Thomas testified:

"Q. Did the deed, Exhibit 1, further provide, as a further consideration, that you would give back a lease of all the property mentioned in the deed? A. Yes, sir. Q. And that lease was to be free of all rent? A. Yes, sir. Q. Did you ever give back to her such a paper? A. Yes, sir. Q. Have you it with you? A. Yes, sir. Q. And that lease was executed upon the same day as the deed? A. Yes, sir. Q. Namely, April 3, 1902? A. Yes, sir."

Said lease, dated April 3, 1902, contains this recital:

"Whereas, said Helena L. Dobson has, by an instrument in writing, a deed of conveyance, dated this day, conveyed to the said Imogene E. Thomas certain real property in the city of Utica, N. Y., which is more particularly described hereinafter, upon condition and with the agreement that the said Thomas shall execute and deliver to the said Dobson a life use of all of said property, free of all rents," etc.

The lease contains a description of all the real estate described in deed, and also this provision:

"This lease is for the term of the natural life of said Helena L. Dobson, during all of which she shall and may freely and fully use, occupy, and enjoy all of the said premises, and the rents, issues, and profits thereof without the payment of any rent whatever; but she shall pay all taxes and assessments, insurance, repairs, and water rates upon and against said premises, and shall pay the interest upon the mortgage now upon a part of the hereinbefore described premises."

Indorsed on the lease is the following:

"Utica, N. Y., April 3, 1902.

"I hereby acknowledge receipt of and delivery to me of the foregoing lease on the above date.　　　　　　　　　　　　Helena L. Dobson."

It seems clear that the deed and lease, having been executed and delivered on the same day pursuant to agreement therefor, constitute one transaction, and must be considered as a single agreement. Matter of Brandreth, 169 N. Y. 437, 62 N. E. 563, 58 L. R. A. 148. Upon the execution and delivery of the deed and lease, what was the legal status of Dobson and Thomas as to the property in question? Was a prior estate created in the grantor, and a future estate, or remainder, dependent thereon, conveyed to the grantee? After the execution of these papers, Dobson retained absolute possession and actually had the income of all the transferred property until her death.

"Where a future estate is dependent on a precedent estate, it may be termed a remainder, and may be created and transferred by that name." Real Prperty Law (Laws 1909, c. 52 [Consol. Laws, 1909, c. 50]) § 38.

In this state a life estate and remainder can be created in a chattel or fund the same as in real property. Smith v. Van Ostrand, 64 N. Y. 278. In Bouvier's Law Dictionary, a remainder is thus defined:

"A remnant of an estate in land, depending upon a particular prior estate created at the same time and by the same instrument and limited to arise immediately on the determination of that estate and not in abridgement of it." 4 Kent, 197.

If the deed and lease constitute one agreement, then we have an estate in land, dependent upon a prior estate, created at the same time and by the same instrument; hence a remainder.

Judge Woodruff said, in Moore v. Littel, 41 N. Y. 66:

"If you can point to a human being, and say, as to him, 'That man or that woman, by virtue of a grant of a remainder, would have an immediate right to the possession of certain lands if the precedent estate of another therein should now cease,' then the statute says he or she has a vested remainder."

It follows, then, that Thomas, by virtue of said deed and lease, acquired a vested remainder in said real property, subject to the precedent estate therein or life use of Dobson.

In Matter of Brandreth, supra, a father irrevocably transferred to his four daughters 11 shares of stock. On the same day, the daughters executed and delivered to him an instrument reciting that their father had transferred the stock to them upon the condition "that he is to receive all dividends declared upon said stock for the rest of his life, and also upon the condition that he have the right to vote on said stock as though the transfer had not been made," and directed that the father be allowed to vote on said stock, and that all dividends declared be paid to him during his life. It was also declared that said instrument remain in full force until the father's death. The instrument was made binding upon the daughters' heirs and executors. The court held:

"The effect of these instruments was to transfer to the daughters the 'remainder' in the stock after the donor's death, reserving to the latter an estate for life."

Washburn defines a remainder as an estate or interest to take effect in possession or enjoyment, immediately upon the termination of a prior estate. The parties to the transfer, Dobson and Thomas, understood their interest in this estate as that of a "life estate" and "remainder," respectively; for in Exhibit 4, in evidence, signed by both of them, dated subsequently to the deed and lease, they use this language:

"Whereas, the undersigned, Helena L. Dobson, and the undersigned, Imogene E. Thomas, are, respectively, the owners of the life estate and of the remainder," etc.

A copy of the will of Dobson, dated January 20, 1906, in evidence contained this recital:

"Second. I have heretofore by deed dated April 3, 1902, made a disposition of my real estate to take effect after my death."

While this in no way binds Thomas, it indicates that Dobson understood that the disposition she had made of her property was not to take effect until after her death.

If the deed had been executed and delivered for a valuable consideration, April 3, 1902, without the covenant for the life lease, rent free, and the lease had been executed the next day, as an independent agreement, then the contention of appellant that an absolute fee passed to Thomas on the delivery of the deed would present a very serious question, in the absence of proof of an intention to evade the transfer tax law (Consol. Laws 1909, c. 60, §§ 220–245). Matter of Miller, 77 App. Div. 473, 78 N. Y. Supp. 930. If the instruments were executed on different dates, they would be presumed to be separate and distinct, if they did not depend upon each other for effect. Dechert v. Municipal Electric Light Co., 9 App. Div. 573, 41 N. Y. Supp. 692.

In the case under consideration, the very language of the deed calls for a "valid and sufficient lease of all the hereinbefore described real property, which lease shall be for the term of the natural life of the party of the first part hereto, and shall so lease all of said premises to the party of the first part free of all rent"; and the lease of the same date reads:

"Whereas, said Helena L. Dobson has, by an instrument in writing, a deed of conveyance, dated this day, conveyed to the said Imogene E. Thomas certain real property in the city of Utica, N. Y., which is more particularly described hereinafter, upon condition and with ·the agreement that the said Imogene E. Thomas shall execute and deliver to the said Helena L. Dobson a life lease of all of said property, free of all rents: Now, therefore, in consideration of said covenants and of $1.00," etc.

The provisions and recitals of the deed and lease so interlaced as to constitute one agreement. There are cases holding that transfers made upon a valuable consideration are not taxable, because the tax is not one upon property, but upon the right of succession. Matter of Dows, 167 N. Y. 227, 60 N. E. 439, 52 L. R. A. 433, 88 Am. St. Rep. 508; Matter of Miller, supra. There is nothing in the Dobson deed which approaches a valuable consideration for the transfer of about $80,000 worth of real estate. True, Thomas agrees in effect to give such care to Dobson as may suit her convenience, a consideration in no manner commensurate with the transfer of this large amount of property, with a yearly income of about $6,000.

In support of this view, that Dobson only intended to be relieved of the burdens and care of her property when she executed the deed, we have Exhibit 3, dated January 22, 1903, by the terms of which Thomas was given full charge of all of the real estate as agent ·of Dobson, authorized to collect the rents, keep the property in repair, and required to account to Dobson for all moneys collected, and was given for her services 10 per cent. of the gross income.

As further evidence that Dobson by said deed only intended to place the absolute title and possession of her real estate in Thomas when she was through with it, we have Exhibit 4, which trustees $47,500, the proceeds of the sale of a portion of said property, and which provides for the investment of that money, and the payment of the in-

come to Dobson during her life; and that money was to take the place of the real estate, and, upon the death of Dobson, the principal should be turned over to Thomas.

It therefore seems clear that this was a transfer by deed of certain real estate intended to take effect "in possession or enjoyment at or after" the death of the grantor, Dobson.

It is also plain that Thomas, within the meaning of the statute, was not in the "enjoyment" of said property at any time during the life of Dobson, nor had she any such right. The right of enjoyment implies rights of the user, and of acquiring the fruits or income of the thing, as timber, the young of cattle and the rents of realty.

"It is an enjoyment of the fee to possess it, and to have the full control of it, including the power of alienation, by which its full value may at once be realized." Nicoll v. New York & Erie R. R. Co., 12 N. Y. 127.

The transfer did not constitute a gift inter vivos, as such gifts must go into immediate and absolute effect (Irish v. Nutting, 47 Barb. 370; Pearson v. Pearson, 7 Johns. 26; 8 Am. & Eng. Ency. of Law [1st Ed.] 1313); nor a gift causa mortis, for the reason that the agreement contained no power of revocation in case of the recovery of the donor (Doty v. Willson, 47 N. Y. 585; 2 Kent, Comm. 44; Bliss v. Fosdick, 86 Hun, 162, 33 N. Y. Supp. 317; Id., 151 N. Y. 625, 45 N. E. 1131).

"Contemplation of death," or a feeling that it was at hand, did not move Dobson to make said transfer to Thomas, because in it she provided for her support and maintenance, rather than for her death and burial.

It is so strenuously insisted by the appellants that the title to the premises in question passed to Thomas absolutely in 1902, and, having so passed, and the tax being upon the devolution of title, rather than on the property, no tax should have been assessed thereon, let us test the claim by an example. The facts show that Thomas, when the deed was given, had a husband and two children living. Suppose, while they were living, Thomas, the grantee, had died; would her surviving husband have been entitled to curtesy in the real estate in question? No. Why? Because it is a general rule that, to support a tenancy by the curtesy, there must be an actual seisen of the wife. Mercer's Lessee v. Selden, 1 How. 37, 11 L. Ed. 38.

It is said that, if there be an outstanding estate for life, the husband cannot be the tenant by the curtesy of the wife's estate in reversion or remainder, unless the particular estate be ended during coverture. If the husband, for the enjoyment of his curtesy, would have to wait until Dobson's death, then there was no complete title in his wife until Dobson's death. This seems so plain that I feel that neither mind nor matter should be further taxed in a discussion of it. Ferguson v. Tweedy, 43 N. Y. 543.

The whole transaction looks to me like a varnished attempt to evade the transfer tax law. It was not a bona fide sale for a valuable consideration, but a gift by deed of $80,000 worth of real estate for such companionship and care as Thomas might feel equal to. Dobson sold the cow, but hung onto the tail and milk. On the evidence in this

case, the title of Thomas was as fruitless and barren as was Samson's mother before the angel called. The woman with every other requisite awaited the germ of life; so Thomas sat on the sands of a barren title, awaiting Dobson's death for full fruition.

If these views are correct, then the transfer in question was "intended to take effect in possession or enjoyment" at or after the death of the grantor, and is taxable under subdivision 3 of section 220 of the transfer tax law.

The appeal of Mary Agnes Young, as administrator of the estate of William A. Young, from a tax of $50.78 imposed on $1,015.69, remains to be considered. The deed, Exhibit 1, contains the following:

"Also that she, said party of the second part, shall and will, within one year after the death of the party of the first part, make the following payments, viz.: * * * Second. Will pay to Will Young, of Jefferson avenue, Utica, New York, the sum of one thousand dollars."

It is further provided by Exhibit 1 that, if Young dies before Dobson, Thomas need not pay said sum to any one. Dobson reserved the life use of said gift of $1,000. Young had to outlive Dobson to be at all benefited. Dobson's death and Young's survivorship were essentials to the maturity of this gift, that could only be determined by the lapse of time; hence it was not an "inter vivos" gift, as claimed, which matured on April 3, 1902, when the deed was given, but more in the nature of a testamentary provision, arising out of the agreement between Dobson and Thomas, to which Young was not a party. It was a transfer conditioned upon Young's survivorship of Dobson.

Exhibit 1, deed, provided for its payment "within one year after the death of the party of the first part" (Dobson). I see no difference between this and a provision in a will for the payment of a legacy to Young, conditioned upon his outliving the testator. It was a conditional transfer, "intended to take effect in possession or enjoyment at or after" the death of the donor, Dobson. On Dobson's death the right of succession accrued to Young, who then acquired an "indefeasible ownership" in the $1,000, and such ownership "identifies the person who ought to pay." Matter of Seaman, 147 N. Y. 69, 41 N. E. 401.

The tax of 78 cents on legacies under Dobson's will to Young I will not consider, as the tax was legally imposed.

All of the appraiser's report involved on this appeal herein is confirmed.

Decreed accordingly.