In the Matter of the Estate of JOHN W. BOYLE, Deceased.

Surrogate's Court, Oneida County, January 27, 1927.

**Executors and administrators — purchase of stock from estate by executor who also is residuary legatee at inventory price, without knowledge of other legatees — said executor sold stock at profit four months later — executors chargeable with profit where will contemplated apportionment of securities among all residuary legatees on notice to all.**

The executors of an estate, who sold to a coexecutor, who was also a residuary legatee, without the knowledge or consent of the other legatees, 100 of the 350 shares of the common stock of a certain corporation, which the estate owned, at the inventoried price thereof, are chargeable with the difference between the value of the stock as inventoried and the net amount which the coexecutor received on a sale of the stock, approximately four months after it was transferred to him, where the provisions of the will, under which the executors acted, in directing the division of the securities, contemplated an apportionment of said securities among all the residuary legatees on notice to all and with their consent; the account herein, therefore, must be surcharged with the difference between the amount for which said coexecutor sold said stock and the price he paid for its transfer to him.

INTERMEDIATE accounting by executors.  Objection by residuary legatees to purchase of stock from estate by coexecutor.

*Lee, Dowling & Brennan*, for the executors.

*Colegrove & Baker*, for the contestant John W. Young.

*Charles J. Fuess*, special guardian, for Kenneth Young, a minor.

EVANS, S.  The last will and testament of the above-named testator disposed of an estate approximating in value $700,000. The executors filed an intermediate account to which objection is made to one item by residuary legatees.

Mr. Robert H. Elmendorf of New York city is one of the executors and he is also a residuary legatee.

It appears that the estate owned a great number of securities, among which were 350 shares of the common stock of Sears, Roebuck & Co.  This stock was inventoried at eighty-three dollars and seventy-five cents per share.

In the month of May, 1924, Mr. Elmendorf expressed a desire to his coexecutor and their attorney that 100 shares of this stock be transferred to him personally and its value charged against his interest as a residuary legatee.  The stock at this time was quoted at a little under its inventoried value and Mr. Elmendorf proposed paying the inventoried price.  This offer was accepted and the transaction closed.

The procedure necessary in transfer tax proceedings delayed

Surrogate's Court, Oneida County, January, 1927. [Vol. 128

the actual time of the transfer of the stock to Mr. Elmendorf until the month of August, 1924. The evidence shows that this stock took an upward trend and a portion of the remaining shares of the stock was sold by the executors in September, 1924, for 101, and the balance in December, 1924, at 145.

The stock held by Mr. Elmendorf was sold by him on December 23, 1924, for 145 and after deducting broker's commissions and tax the net amount received by him was $14,471.

It is claimed by the contestant that this transaction was not authorized by law or by the provisions of the will and that the executors should be held accountable for the sum of $14,471, the amount received by him for the stock, instead of $8,375, the price paid.

The 7th paragraph of the will, relating to the matter under consideration, reads as follows: " All the rest, residue and remainder of my estate (exceptions noted), I direct my executors and trustees to sell and convert into cash, if not in the form of securities that can be equitably divided, and divide the same or the proceeds thereof into three equal parts and of said three equal parts shall be divided into thirds and distributed to the following named persons in the manner following."

It is the contention of the executors that the language in the will as above quoted empowered the executors to transfer to Mr. Elmendorf the shares of stock in question to apply on his share of the estate as a residuary legatee.

Section 265 of the Surrogate's Court Act provides: " No profit shall be made by an executor, administrator, guardian or testamentary trustee by the increase, nor shall he sustain any loss by the decrease or loss, without his fault, of any part of the estate or fund; but he shall account for such increase, and be allowed for such decrease or loss on the settlement of his accounts."

The purpose of this statute is to require of representatives of estates disinterested service free from personal consideration, and on the other hand such representatives assume no personal obligations for loss, so long as the affairs of an estate are administered with common and ordinary business prudence.

It is asserted on the part of the contestants that this transaction resulted in a personal profit to the executor for which he is legally bound to account to the estate.

I think that the present case is to be distinguished from that of an executor speculating with estate property under his control and realizing a profit.

I can discover nothing in the evidence to warrant a charge of bad faith on the part of the executor.

In *Matter of Bussman* (187 App. Div. 574) an administrator who was one of the distributees of the estate transferred to himself shares of stock and sold them at a profit; he was held accountable to the estate for the profit, since it appeared that he was not the only distributee, there being a widow and an infant who had no notice or knowledge of the transaction.

If it was the intention of this executor to speculate in the stock that was transferred to him, he naturally would have taken over a larger block of the stock which he might have done and still be within the limit of his interest in this estate.

It was originally considered the primary duty of a representative of an estate to convert the personal property into cash for the purpose of division.

The increasing number of estates owning stocks and bonds created a condition where a forced sale of securities resulted in sacrifice and unnecessary loss to the estate. To remedy this defect legislation was enacted and is now contained in section 268 of the Surrogate's Court Act. The provisions of this section so far applicable to the case at bar are as follows: " In either of the following cases, the decree may direct the delivery of an unsold chattel, or the assignment of an uncollected demand, or any other personal property, to a party or parties entitled to payment or distribution, in lieu of the money value of the property:

" 1. Where all the parties interested manifest their consent thereto by a writing filed in the surrogate's office.

" 2. Where any legatee or distributee files a consent to accept as payment in whole or in part any specified personal property at a value to be ascertained by appraisement."

This procedure affords a fair and orderly scheme of division without resorting to the sale of property.

It is argued by the executors that the will itself clothed them with power to make an arbitrary division of the securities among the residuary legatees. The testator directed his executors and trustees to " sell and convert into cash, if not in the form of securities that can be equitably divided and divide the same or the proceeds thereof." I think that the reference to the division of the securities merely qualified the direction to convert the property into cash; that a division contemplated an apportionment of securities among the residuary legatees on notice to all and with their consent. Whatever view may be entertained as to the procedure to be adopted, there was in fact no division of the securities. There was merely a transfer of stock to the executor, residuary legatee, without knowledge or consent of the other

residuary legatees. The transaction appears to have taken place under a wrong interpretation of the 7th paragraph of the will.

I find and decide that the executors are chargeable with the value of the stock in question based on its sale price, $14,471, and that the account should be surcharged with the difference between that amount and $8,375, the transfer price to Mr. Elmendorf, amounting to $6,096.

Decreed accordingly.