In the Matter of the Estate of RICHARD DELAFIELD, Deceased.

Surrogate's Court, Orange County, January 27, 1932.

*Appleton, Rice & Parrin* and *Haywood & Benedict* [*Williston Benedict* of counsel], for the executors.

*Fraser, Speir & Meyer*, for Woodlawn Cemetery.

*Delafield, Thorne, Burleigh & Marsh* [*George W. Burleigh* and *W. Howard Fisher* of counsel], for Trinity Church.

*Stanley B. Johnson*, special guardian.

TAYLOR, S. The first question to be determined, taking them in the order set out in the petition, is whether paragraph " fourthly " of the will authorizes the executors to distribute *in kind* a large number of shares of stock of the Chase National Bank and the Chase Securities Corporation, the major asset of the estate, *pro rata* among the legatees entitled thereto, in trust or otherwise, without a sale thereof, and to sell fractional shares incapable of distribution and to distribute the proceeds of such sale.

The 4th paragraph provides, in part, " The proceeds of such sale [referring to real property] and also all the rest, residue and remainder of my personal property, or the proceeds of sale of such of my residuary personal property as my executors or executor may make in order to carry out the provisions of this my will, I give and dispose of as follows." This paragraph then goes on with a large number of subdivisions providing outright money bequests and also creates a number of trusts.

The wording of this clause is somewhat unusual in that it seems to refer to a limited, or part, sale of personal property, although no express authority in a will to sell personal property is necessary. Perhaps this clause was so worded to harmonize with the provisions

in clause " fifthly " authorizing the executors in setting up the trusts to transfer to themselves for or on account of the capital of the trust estates, in their discretion, in lieu of cash and to retain as proper investments, any personal property *or securities* owned by the testator at the time of his death.

Although I do not need to so decide it is nevertheless quite doubtful if this provision be broad enough to authorize distribution *in kind* to satisfy the outright money legacies.

Included in the assets are 15,159 shares of the capital stock of the Chase National Bank of the city of New York, comprising a little over seventy-four per cent of the gross assets and eighty-five per cent in value of the assets available for distribution at the date of the petition. The allegation in the petition that because of the great shrinkage in corporate stock values, in particular, a conversion of the personal property and the real estate into cash, at this time, would not be sufficient to pay more than fifty-five per cent of the legacies in trust and outright, is not controverted.

There are thirty infants and one incompetent interested in this estate as beneficiaries in one form or another. Enough of the facts has been recited to unquestionably indicate that a sale of the corporate stock at this time would cause considerable loss to the legatees. It might be well that in the judgment of those familiar with such questions, holding of this corporate stock for a time might see its appreciation in value, to the benefit of the beneficiaries under the will.

To permit legatees and trustees to take corporate stock *in kind* instead of the proceeds of sale thereof, when such stock had so depreciated in value as not to pay legacies in full, if sold, and hold the stock itself, if it be their judgment that there be reasonable ground for the position that in time such stock would appreciate in value, section 268 of the Surrogate's Court Act was enacted. (*Matter of Boyle*, 128 Misc. 639, 641.) Subdivision 3 provides for distribution in kind: " Where it appears that a sale thereof, for the purpose of payment or distribution, would cause a loss to any infant or incompetent legatee or distributee, and the value thereof has been fixed by appraisement." This estate presents what might be called a typical case for the salutary provisions of this section of the Surrogate's Court Act and distribution *in kind*, pursuant thereto, will be directed.

## CEMETERY BEQUESTS.

There are a number of bequests in trust for the upkeep of ceme-tery plots, and the question arises whether all of these bequests abate *pro rata*, it being conceded that there has been such shrinkage

in the value of decedent's assets that all cannot be paid in full. Doubtless the testator knew of the possibility of this situation, for he provided in his last codicil, executed in September, 1929, while his will bears date October 7, 1925, that " should my estate, contrary to my anticipation, be insufficient to satisfy all the bequests, in trust or otherwise, in my said Will and in the Codicils thereto, including the preceding articles of this codicil, all of the bequests shall abate *pro rata.*" Does this direction operate upon these bequests?

While it is the rule, with few exceptions, in the absence of an express intention to the contrary, legacies abate *pro rata* (*Matter of Neil,* 238 N. Y. 138), this does not generally apply to bequests for cemetery plot upkeep. (*Matter of Hinman,* 32 Misc. 536; *Matter of Maverick,* 135 App. Div. 44; affd., 198 N. Y. 618; *Matter of Brundage,* 101 Misc. 528; affd., 186 App. Div. 722; modfd., 226 N. Y. 691.)

This item has long been recognized as part of the funeral expenses. (*Matter of Myers,* 140 Misc. 442; *Matter of Boyle,* Id. 523.)

The statute commands that " every executor or administrator shall pay, out of the first moneys received, the reasonable funeral expenses of decedent, and the same shall be preferred to all debts and claims against the deceased " (Surr. Ct. Act, § 216), and the expression " funeral expenses " includes, among other things, " a reasonable charge or expenditure for the perpetual care of the decedent's burial lot." (Id. § 314, subd. 3.) Even if the will had made no provision in this respect, the executors under these sections of the law, could set aside a reasonable sum for that purpose. This estate is over $2,000,000 and a bequest of $3,000, the income therefrom to be applied in perpetuity to the care and upkeep of the grave of testator's wife, Edith Pauline Delafield (in which plot testator is also buried), is a reasonable amount (*Matter of Myers,* 140 Misc. 442), and will be preferred.

Legacies to the other cemeteries, not being part of decedent's own funeral expenses, will, of course, abate *pro rata.*

### BARD PORTRAIT.

Subdivision 59 of paragraph " fourthly " of the will authorizes the executors, at an expense not exceeding $5,000, to cause to be painted a portrait of John Bard, one of the founders of St. Stephen's College. There is unmistakable authority to the executors to spend the maximum amount for the purpose named, in their discretion, but, of course, this maximum amount must be reduced in the same proportion other legacies are abated.

DISPOSITION OF INCOME ACCRUED DURING ADMINISTRATION PERIOD.

The life beneficiaries of the trusts created by this will are entitled to income from the date of the testator's death. (*Matter of Bird,* 241 N. Y. 184.)

The problem is in the computation. We find the answer in *Matter of Benson* (96 N. Y. 499, 511) and *Matter of Lord* (134 Misc. 198; affd., 228 App. Div. 771). Following the rule laid down in these cases, the percentage that the principal of the trusts bears to the aggregate legacies, in trust and outright, should be ascertained and that percentage of income earned during administration will be allocated to and divided among the trusts according to their respective amounts, and the balance to all legacies, outright and in trust, according to their respective amounts.

### LAPSING OF LEGACY TO STATEN ISLAND ACADEMY.

Subdivision 61 of paragraph " fourthly " of the will reads as follows: " I give to the Staten Island Academy, a non-stock corporation organized under the Educational Law of the State of New York, the sum of ten thousand dollars. This gift is upon the condition, however, that the said corporation will perpetuate the name ' Delafield Square ' as the name of the premises on Staten Island recently purchased from me by it so long as the said corporation shall retain the title to the said premises; and upon the further condition that should it sell the said premises within ten years from the date on which it took title thereto, or prior to my death, if I shall live beyond that time, then this bequest shall be deemed to be null and void; and upon the further condition that if the said bequest shall have been received by the said corporation, and the conditions above created concerning it shall have been broken, the amount of the bequest shall be repaid to my legal representatives without interest and be by them transferred to the Rector, Church Wardens and Vestrymen of Trinity Church, to which corporation I, in that event, give the said sum of ten thousand dollars, the income of the investments and reinvestments thereof to be used in perpetuity by it for its religious and charitable work in connection with the said Seaside Home. If, for condition broken during my lifetime, the above legacy to the Staten Island Academy shall be void and of no effect I give the amount thereof, to wit, the sum of ten thousand dollars, to the said the Rector, Church Wardens and Vestrymen of Trinity Church upon the same trust for the benefit of the Seaside Home as is above stated."

Testator died August 3, 1930. The will bears date October 7, 1925. The real property mentioned in this subdivision was sold

by the Staten Island Academy on June 17, 1931, which was within ten years of its conveyance by the testator to the academy.

The executors have considered that this legacy lapsed for condition broken. The legacy seems to be in the nature of an estate upon condition subsequent. Trinity Church has appeared and contends that although the legacy has never been paid to Staten Island Academy, the sale of the real property being after the period at which the estate might legally have been finally settled — after the expiration of the published time for creditors to present their claims — for the purposes of this section, we should consider that done which might have been done, viz., the legacy paid. Of course, this leaves out of consideration necessary delay beyond the statutory period for settlement which we must reasonably anticipate would arise.

In construing this clause we should keep before us the rule that "it is the testator's mind we seek to read." (*Matter of Neil*, 238 N. Y. 138, 140.)

"Precedents and rules, frequently, have but slight value in interpreting wills; for those instruments are rarely, and in the nature of things, are not likely to be, similar in terms. When the testator's intention is obscure, resort to them may be helpful in ascertaining it. Where, upon inspection of the will and upon a consideration of relevant facts and circumstances, an intent is apparent, all rules to the contrary must yield; provided that intent does not offend against public policy, or some positive rule of law." (*Robinson* v. *Martin*, 200 N. Y. 159, at p. 164.)

Canons of construction are helpful, but, after all, absolutely controlling precedent for the interpretation of will clauses of peculiar phraseology and those making bequests of a nature or upon conditions not ordinarily found in wills, are difficult to find, for it has been so aptly said that no will has a twin brother.

The intent of testator seems clear. The conditions are in the disjunctive: "* * * upon the further condition that should it sell the said premises within ten years from the date on which it took title thereto, *or* prior to my death, if I shall live beyond that time, then this legacy shall be deemed to be null and void * * *." To be entitled to this legacy it was incumbent upon the legatee to hold the real property the longer of the two periods. It did not do so; and, therefore, except for the contention that the sale was not until after the time proceedings might legally have been commenced for final accounting, condition was broken. Giving that construction to this will which has "in its favor the balance of reasons and probabilities" (*Weeks* v. *Cornwell*, 104 N. Y. 325, 336), I think the precautionary provision for the return to the executors of the money,

if the legacy had theretofore been paid, was to take care of the possibility that the testator might die shortly after the making of his will (which was in 1925) and not long after the conveyance of the property to the academy, the payment of the legacy in the prompt and orderly administration of the estate, and condition broken sometime afterward; in other words, he did not care to delay the final settlement of his estate and to have his executors hold this amount in abeyance pending determination of ownership. I hold that this legacy has lapsed.

Let a decree be submitted in accordance herewith settled upon three days' notice or by consent.