In the Matter of the Estate of JAMES S. MAWHINNEY, Deceased.

Surrogate's Court, Delaware County, December 24, 1932.

*Becker, Jackson & Farone,* for the executor, Thomas L. Craig.

*Seybolt & Seybolt,* for Clarence J. Mawhinney.

*Frank C. Huntington,* for the Board of American Missions of the United Presbyterian Church of North America.

O'CONNOR, S. The executor has filed his account and asks that the same be judicially settled and also for a construction of the will of the testator.

James S. Mawhinney, the testator, died on January 2, 1932, leaving a last will and testament, dated on that day, and leaving

no widow and no children of his body, but leaving Clarence J. Mawhinney, an adopted son. His total estate as appraised for the purpose of transfer tax amounted to $8,911.91, and the debts of decedent amounted to $227.45. By his will he bequeathed specific legacies totaling $1,800 and devised and bequeathed the remainder of his estate, both real and personal, to the Board of American Missions of the United Presbyterian Church of North America, hereafter designated as American Missions; $800 was bequeathed to the United Presbyterian Church of North Kortright; $200 was bequeathed to the North Kortright Cemetery Association in trust, to be invested and the income therefrom, or so much thereof as should be reasonably necessary, to be used for the perpetual care and maintenance of his lot in said cemetery, and the remainder of said net income, if any, to be used for the care, maintenance, improvement or embellishment of said cemetery. It will thus be seen that more than one-half of testator's estate is given by the will to charitable and benevolent institutions.

The fourth paragraph of his will reads as follows: " I give and bequeath to my adopted son, Clarence J. Mawhinney, of Whitesboro, N. Y., the sum of Two Hundred Dollars."

The questions involved are whether Clarence J. Mawhinney, the adopted son, is a child within the meaning of the provisions of section 17 of the Decedent Estate Law, which forbids bequests to charitable and benevolent institutions of more than one-half decedent's estate when he leaves a child him surviving, and whether the bequest of $200 in the second paragraph of the will to the cemetery association is a bequest to a charitable institution.

Clarence J. Mawhinney and the executor claim that Clarence J. Mawhinney, the adopted son, is a child within the provisions of section 17 of the Decedent Estate Law and that the bequest to the charitable institutions named in the will are valid to the extent of one-half of the estate of the testator and no more.

The American Missions contend that Clarence J. Mawhinney, being an adopted son and so designated in the bequest to him in the fourth paragraph of said will, does not come within the provisions of section 17, *first,* because he is not a child within the meaning of that section, and, *second,* because section 114 of the Domestic Relations Law provides that while a foster parent and the person adopted shall sustain toward each other the legal relationship of parent and child and have all the rights, and be subject to all the duties, of that relationship, including the right of inheritance from each other, said section specifically provides that as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster

parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen.

In support of this contention it is urged that to construe the will so as to make the word " child " include the adopted son would be contrary to the clear and manifest intention of the testator as expressed by the will, because he referred to him in the fourth paragraph of the will as " my adopted son;" that the testator had the same right to disinherit an adopted child that he had to disinherit a natural child, and that was his intention except as to the $200 bequest.

It is true that the intention of the testator should govern and that the court should, if possible, adopt that construction which will render the disposition valid (*Seitz* v. *Faversham*, 205 N. Y. 197; *Matter of Gallien*, 247 id. 195), and this rule is applied more strictly in favor of gifts to charity. (*Matter of Allen*, 111 Misc. 93; affd., 202 App. Div. 810; *Matter of Olmstead*, 131 Misc. 238.) However, here we are confronted with the proposition that if we carry out the clear intention of the testator as expressed in the will it contravenes the statute. It is the interpretation of the statute rather than of the will which renders the bequests to charity invalid. When the meaning of the will is apparent from its language, the plain import of the language cannot be departed from even though that import result in rendering the will invalid. (*Van Nostrand* v. *Moore*, 52 N. Y. 12.) Courts of construction cannot wrest the language of a will from its natural import in order to save it from deserved condemnation. (*Cottman* v. *Grace*, 112 N. Y. 299.)

In *Central Trust Co.* v. *Egleston* (195 N. Y. 23) it is held: " In the construction of wills having ambiguous or indefinite testamentary provisions, the inquiry in each case must be what provision has the testator intended to make for the disposition of his estate; and not whether he intended to dispose of his estate according to the statutory rules governing testamentary dispositions; when the provisions are understood and the intent of the testator ascertained, then it is for the court to determine whether such intended provisions are valid or otherwise and it is the duty of the court to interpret the will as made, not to construct a new will."

It is very apparent that the testator here intended to give more than one-half of his estate to charity. Our problem is to determine whether or not by so doing he violated the statute, *i. e.*, section 17 of the Decedent Estate Law. If he did, the bequests to charity are invalid to the extent they exceed one-half of the estate.

It is also the contention of the American Missions that it is a remainderman within the meaning of section 114 of the Domestic Relations Law, and *Matter of Leask* (197 N. Y. 193) is cited in

support thereof. The right of inheritance by an adopted child was for a long time limited to inheritance from the foster parent or parents and an adopted child cannot now inherit from the natural children or other relatives of the foster parent or parents. (*Matter of Powell,* 112 Misc. 74; affd., 193 App. Div. 965; *Matter of Hall,* 234 id. 15.) It is difficult, and the court does not deem it necessary, to digest and harmonize the various decisions under this section. Suffice to say, the tendency of most of the decisions, and particularly the later ones, is to extend rather than restrict the right of the adopted child to inherit from the foster parent even to the exclusion of the residuary legatees and remaindermen. (*Matter of Hoyt,* 150 App. Div. 621; *Matter of Horn,* 256 N. Y. 294; *Gilliam* v. *Guaranty Trust Co.,* 186 id. 127.)

The term " remaindermen," as used in section 114 of the Domestic Relations Law, is not to be confused with the term " residuary legatee." A residuary legatee is a person to whom is bequeathed what is left of the estate after the payment of debts, expenses of administration and other legacies, while a remainderman is one who becomes entitled to the estate after the intervention of a precedent estate or on the termination by lapse of time of rights of a precedent estate created at the same time. Section 38 of the Real Property Law defines a remainderman as follows: " Where a future estate is dependent on a precedent estate, it may be termed a remainder, and may be created and transferred by that name."

Washburn defines a remainder " As an estate or interest to take effect in possession or enjoyment immediately upon the termination of a prior estate."

In Bouvier's Law Dictionary a remainder is thus defined: " A remnant of an estate in land, depending upon a particular prior estate created at the same time and by the same instrument and limited to arise immediately on the termination of that estate and not an abridgment of it." (See *Matter of Dobson,* 73 Misc. 170, 173.)

This is what distinguishes *Matter of Leask (supra),* cited by counsel for American Missions in support of this contention, from the case at bar. There a testator gave a certain sum to his executors to pay the income thereof to his nephew " during his life, and upon his death leaving a child or children surviving him, to pay over the principal of said sum to such child or children." In the event the nephew died leaving no children surviving him, the trust fund was to " revert to and become part of " the testator's residuary estate. After testator's death, his nephew died leaving no issue, but leaving an adopted child surviving him. It was held

that such adopted child could not be deemed a child of testator's nephew so as to defeat the right of remaindermen and that the residuary legatees of the testator were under the statute to be considered such remaindermen. In that case there was a precedent estate on the termination of which the property was to go to the remaindermen, that is the person or persons who would be entitled to the last estate. Here there is no precedent estate, and, therefore, no remaindermen within the meaning of the language employed by section 114 of the Domestic Relations Law.

This distinction is stated very clearly by Judge CRANE in the recent decision in *Matter of Horn* (256 N. Y. 294, at p. 297) as follows: " The only instance in which the adopted child is not deemed to be the child of the foster parent is where *future* estates may be cut off by such adoption. Where the passing by limitation over of real or personal property is dependent on a parent dying without heirs or children, it would be very easy for a person having no child or children to adopt one and thus cut off the contingent remainder. The statute was aimed at such a possibility. Such is the reasoning in *Matter of Leask (supra)*."

The American Missions is a residuary legatee, that is, it takes the residue of the estate after the other legacies are provided for, but is not a remainderman within the provisions of section 114 of the Domestic Relations Law. Clarence J. Mawhinney, the adopted son of the testator, is a child within the meaning of the language of section 17 of the Decedent Estate Law, and, therefore, the bequest of the residuary estate to the American Missions and the other bequests to charitable institutions being in excess of one-half of the estate of testator, they are valid to the extent of one-half of the estate and no more.

The second paragraph of testator's will reads as follows: " I give and bequeath to the North Kortright Cemetery Association, the sum of Two hundred dollars ($200.00) in trust, nevertheless, for the following trust and purposes:

" To invest and reinvest said sum, and to use the net income therefrom, or so much thereof as shall be reasonably necessary, for the perpetual care and maintenance of my lot in said cemetery; the remainder of said net income, if any, shall be used for the care, maintenance, improvement or embellishment of said cemetery."

The executor contends that this is not a bequest to a corporation or purpose mentioned in section 17 of the Decedent Estate Law. The adopted son claims that it is. The decisions are conflicting on this point.

In *Matter of Braasch* (206 App. Div. 96) it is held: " For the purpose of computing the amount which the residuary legatees

may take under section 17 of the Decedent Estate Law, a trust fund given to a cemetery corporation for the purpose of maintaining the burial lot of the testatrix must be included among the bequests to charitable corporations."

Section 13-a of the Personal Property Law states that gifts, grants and bequests of personal property in trust for the purpose of perpetual care and maintenance, improvement or embellishment of private burial lots, in or outside of cemeteries, etc., are permitted and shall be deemed to be for charitable and benevolent uses. Section 114-a of the Real Property Law contains a similar provision in relation to gifts, grants and devises of real property.

In *Matter of Opdyke* (230 App. Div. 290) it is held that a bequest to a cemetery corporation is not a bequest to any of the corporations or purposes mentioned in said section 17. There the testatrix bequeathed $300 to a cemetery association in trust to use the income for the decoration and ornamentation of her cemetery lot.

If the income from the trust fund in this case were limited to the perpetual care and maintenance of the testator's lot in the cemetery, this court would hold that it was not a bequest for a charitable or benevolent institution, the statutes and decision above referred to to the contrary notwithstanding. Such a bequest would in fact be a request that the cemetery association be paid for services to be rendered by it for the care and maintenance of the lot of the testator. It would seem that the testator ought to have the right to make such a provision, the same as he does to provide for his funeral expenses, without having said bequest classed as a bequest to a charitable institution. In fact, bequests for the perpetual care of testator's own lot have long been recognized as part of the funeral expenses. In *Matter of Maverick* (135 App. Div. 44) it is held: " A bequest of a moderate sum of money in trust for the purpose of keeping the testator's burial plot in repair is not subject to a transfer tax, being a part of the burial expenses which are made exempt by the statute." (See *Matter of Delafield,* 142 Misc. 536; *Matter of Myers,* 140 id. 442; *Matter of Boyle,* Id. 523.) However, in view of the fact that the testator went further and provided that the remainder of said net income, if any, should be used for the care, maintenance, improvement or embellishment of the cemetery, and it is quite probable that the income from the trust fund would exceed the amount necessary for the upkeep of testator's own lot, this court does not feel constrained to go contrary to the express language of the statute and the decision in *Matter of Braasch* (*supra*).

In determining what amount constitutes one-half of the estate, section 17 of the Decedent Estate Law provides that the corporations specified therein are entitled to one-half after the payment

of the debts of the testator, and the authorities hold that said corporations are not liable for the payment of the expenses of administration (*Matter of Seymour*, 239 N. Y. 259, 262; *Matter of Brooklyn Trust Co.*, 179 App. Div. 262; *Matter of Arnolt*, 127 Misc. 579), nor entitled to any increase or income accruing after the death of the testator. (*Matter of Brooklyn Trust Co.*, *supra; Matter of Colburn*, 157 N. Y. Supp. 676.) The total amount of the estate as appraised for transfer tax purposes was $8,911.91; the debts of the testator were $227.45, leaving a balance of $8,684.46. One-half of this amounts to $4,342.23, from which should be deducted the following bequests: North Kortright Cemetery Association, $200; United Presbyterian Church of North Kortright, $800, leaving a balance of $3,342.23, the amount of the legacies to which the Board of American Missions of the United Presbyterian Church of North America is entitled under the will of testator as construed by this court, and the balance of said estate after the payment of funeral expenses and expenses of administration goes to the adopted son, Clarence J. Mawhinney.

A decree may be prepared and submitted upon notice to the court accordingly.