[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING RE: DEFENDANTS' MOTIONS TO DISMISS (#106 AND #108)
On January 25, 1995, the Farmington Probate Court entered a decree approving the sale of an undivided one-half interest in land by the conservator of the Estate of Hilda Rankin Olyphant, an incapable person, to Mrs. Karen Wand. Plaintiff, who attempted to purchase the interest in the land from the incapable's estate, filed this appeal from the Probate Court decree authorizing the sale to Mrs. Wand. This court denied prior motions to dismiss filed by the defendants which had asserted that plaintiff was not an "aggrieved person" under General Statutes Section 45a-186.[1]
The subject real property consists of approximately twenty-six acres situated on the east side of Mountain Spring Road in Farmington. At, and prior to, the date of the Probate Court decree, title to the land was held by Hilda Rankin Olyphant and her daughter, Mrs. Denise Case, each having an undivided one-half interest therein. In mid-October 1994, William H. Wood, Jr., Esq., the conservator of Mrs. Olyphant's estate, and Mrs. Case listed the real property with T. R. Preston Co. Realty at $385,000; the listing agreement required CT Page 13925 "only non-contingent offers," and specified that any proposed sale would be "subject to Probate Court approval."
As recited in my prior opinion, the listing with Preston was placed on the Multiple Listing Service, and very shortly thereafter, there was contact between realtors (Calciano Realty and Preston) resulting in an October 24, 1994 offer by plaintiff corporation to purchase the property for $320,000. Plaintiff's offer was rejected, Calciano was informed by Preston that there was a second buyer interested in the property, a member of the Preston firm offered the property to plaintiff corporation (through the Calciano firm) for $350,000, and there was a verbal acceptance to purchase at that figure, but apparently in reliance on certain assurances of Preston, a written document was not promptly submitted and/or delivered. On October 27, 1994, plaintiff's agent was informed of the receipt of a "higher offer" which defendants intended to accept; thereafter, plaintiff prepared and signed a non-contingent offer to purchase the land at $385,000, the actual listing price.
The Wand offer, in the amount of $350,000, was received on October 27, 1994. A real estate sales contract, dated October 27, 1994, was signed by Denise L. Case, Mr. Wood, Conservator, Karen Wand, and a representative of T. R. Preston Co. at a purchase price of $350,000; the written contract recited that the sale was subject to Probate Court approval, and that the parties would execute a bond for deed. The bond for deed was signed by the purchaser, Karen Wand, on November 10, 1994, and by the sellers, Mr. Wood, Conservator, and Denise L. Case, on November 14, 1994.
The application for approval to sell the real property under contract to Wand was submitted to the Farmington Probate Court under cover letter dated November 15, 1994. In said letter, the Probate Court was advised that subsequent to acceptance of the Wand offer, an offer in the amount of $385,000 was received from plaintiff corporation.[2] Thus, the situation at the time of the filing of the application for approval of a sale to Wand was one where the conservator had a written sales contract with Mrs. Wand for $350,000, and Schoolhouse's written offer to purchase in an amount of $385,000; and, as stated, the Probate Court was advised of both. CT Page 13926
The initial hearing on the application to sell was adjourned to January 25, 1995 in order that Mrs. Case could be present to inform the Probate Court of her position as the co-owner of the subject land. The conservator's application recited that "it would be for the best interests of the parties in interest to sell the whole of said real property to Karen Wand at the proposed price of $350,000 of which one half, or $175,000, represented the ward's interest in such real property."[3] On January 25, 1995, the Probate Court granted the conservator's application and approved the sale of the real property to Mrs. Karen Wand; by decree dated February 25, 1995, the Probate Court allowed this appeal.
Mrs. Hilda Rankin Olyphant died on July 21, 1995;[4] by her last will and testament, Mrs. Olyphant specifically devised her one-half interest in and to the subject real property to her surviving daughter, Mrs. Denise Case.[5]
Defendants contend, citing Kerin v. Stangle, 209 Conn. 260
(1988), that the conservatorship terminated upon Mrs. Olyphant's death, the ward's interest in the property was devised to (and vested in) Mrs. Case (subject to administration of the decedent's estate), and the appeal by plaintiff from the Probate Court decree authorizing the sale of real property by the conservator has become moot. Plaintiff, on the other hand, maintains that although the death of the ward terminated the conservatorship, the Probate Court decree approving the sale to Wand remains in effect, title did not pass to the incapable's heirs, and accordingly, this appeal is still justiciable.
It was observed in the Kerin case that "[t]he real estate holdings of Charles H. Miller have had a tortuous history of litigation . . ." With regard to the justiciability of this appeal, the parties have referred to two cases which dealt with the Miller holdings: Kerin v. Stangle, supra, involving land in the town of Bloomfield, located off Old Windsor Road; and, Kleinman v. Marshall, 192 Conn. 479 (1984), pertaining to property at 902-910 Wethersfield Avenue, Hartford.[6]
In Kleinman v. Marshall, supra, the conservator of the estate of Charles H. Miller, Harry H. Kleinman, Esq., brought an action to nullify the conveyance of the Wethersfield Avenue property by Mr. Miller to his daughter Beverly Miller Marshall. It was alleged that at the time of the conveyance, Ms. Marshall knew her father was incompetent and that there CT Page 13927 had been filed an application for the appointment of a conservator, that she procured the conveyance without adequate consideration, and that she breached the fiduciary duties owed her father under a power of attorney. Prior to finalization of the proceeding in the trial court, Charles Miller died and Mr. Frank J. Stangle was ultimately appointed administrator c.t.a., d.b.n. of his estate by the Hartford Probate Court.[7]
The trial court set aside the conveyance, the surviving spouse (Mrs. Tillie Miller) intervened as a party defendant, and both defendants (Marshall and Miller) appealed the trial court's decision.
The Supreme Court upheld the trial court's decision setting aside the conveyance, and went on to discuss the justiciable controversy issue raised by Mr. Miller's death:
 "Charles Miller's death, which occurred prior to the rendering of the decision, terminated the conservatorship . . . and title to his property passed to his heirs, subject to the right of administration. The administrator of the estate became the plaintiff in this case. As administrator, his role is to protect the estate for his benefit of all those interested in it . . . in this case, the beneficiaries and the creditors. The defendants [Beverly Marshall and Tillie Miller] have insisted that they are the sole beneficiaries of [Charles] Miller's estate . . . [and] at oral argument counsel for the plaintiff conceded this to be true. He also conceded that the estate is solvent and that there is other property . . that could be sold to pay the creditors. Thus, if the defendants are the only persons interested in the Wethersfield Avenue property, and they have no objection to the conveyance, there is no longer a controversy." (Emphasis added). 192 Conn. supra at p. 483. The court went on to state that if "the defendants are the sole beneficiaries of the estate, then at the death of Charles Miller, the interests of the parties ceased to be adverse," and "[i]n effect, the plaintiff [fiduciary] continued to sue the defendants for the benefit of the defendants." Id. at p. 484. CT Page 13928
In the case at bar, the relative positions of the parties differ from those of the parties in Kleinman v. Marshall. Even if title to the Mountain Spring Road land has now vested in Mrs. Case under Article VI of her deceased mother's will, this action has not been brought by a fiduciary obligated to protect the interests of Mrs. Case, but by an entirely independent party aggrieved by a Probate Court decree issued prior to the death of the decedent, Mrs. Olyphant. Accordingly, defendants, on the instant motion, rely primarily on Kerin v. Stangle, which is more germane to the justiciability issue raised by the posture of this case.
As stated, the Kerin case centers on Mr. Miller's Bloomfield acreage off Old Windsor Road. The detailed background for the decision in Kerin is found both in that case and in Marshall v. Kleinman, 186 Conn. 67 (1982). On October 17, 1979, the Probate Court ordered a sale from the conservatorship of the ward's interest in two pieces of property, one of which was Old Windsor, to alleviate cash flow problems (due to medical expenses) in the incapable person's estate. On November 8, 1979, Attorney Kleinman, the duly appointed conservator, entered into a contract with Jon S. Kerin for the sale of Old Windsor Road for $62,000; on November 21, 1979, the Probate Court approved the sale by the conservator to Mr. Kerin for the contracted amount. Beverly Marshall, daughter, and Tillie Miller, wife, appealed the order of the Hartford Probate Court to the Superior Court, contending that the sale price was inadequate. The Superior Court approved the sale at that, price ($62,000), but modified the decree to allow Ms. Marshall or her designee to purchase the land at the approved figure by a specified date. On appeal, the Supreme Court held that the evidence before the Superior Court did not support the approved low valuation of the land, and the judgment of the Superior court was set aside and a new trial was ordered. Thereafter, the ward, Charles Miller, died (2/4/82), Mr. Stangle was appointed administrator c.t.a., d.b.n. of his estate, and Marshall and Miller withdrew the remanded appeal before the conducting of any new trial.
Kerin v. Stangle, 209 Conn. supra concerned a subsequent action brought by the plaintiff against the administrator c.t.a., d.b.n. for specific performance of the sales contract entered into by Kerin with the conservator, and approved by the Probate Court on 11/21/79; Mr. Kerin contended that the Superior Court judgment, which modified the decree of the CT Page 13929 Probate Court, was "erased" by the withdrawal of the Superior Court appeal and, therefore, the decree of the Probate Court approving the sale for $62,000 remained in effect, and he [Kerin] was entitled to specific performance under his contract with Miller's conservator. The Supreme Court rejected Kerin's argument and held that once the probate appeal is heard and a judgment rendered in the Superior Court, the judgment of the Superior Court "supplants" the Probate Court decree; thus, a subsequent withdrawal of the Superior Court appeal before a new trial in that court would not serve to reinstate the Probate Court decree authorizing a sale of the real property. The Supreme Court in Kerin, as in Kleinmanv. Marshall, 192 Conn. supra, addressed the justiciability question occasioned by Charles H. Miller's death stating:
 "Unfortunately, however, shortly after the publication of our opinion in Marshall v. Kleinman
[186 Conn., supra.] . . and before a new trial could be conducted, the incapable, Miller, departed this vale of tears. Miller's death left his conservator, against whom the remanded appeal was pending, without a ward. That unique state of affairs rendered the remanded probate appeal moot. That conclusion is inevitable since Miller's death terminated the conservatorship . . . [citing Kleinman v. Marshall,
192 Conn., supra] and title to the real estate in question passed to Miller's heirs. There was, therefore, no conservator against whom the appeal could proceed and no real estate for the conservator to sell even if the appeal could somehow have continued." (Emphasis added.)
209 Conn., supra at p. 266-67. The Court indicated that as a result of what transpired since Kerin had first negotiated the contract with Miller's conservator, "there exist[ed] no probate approval for the sale of real estate to him by the conservator," and since it was not now possible to obtain such approval, and as Probate Court approval would be a precondition of a binding obligation, the court below had not erred in denying Kerin's request for specific performance.
The language quoted from the Supreme Court's decision inKerin is material to the present case. While there are CT Page 13930 factual distinctions, including the absence of a Superior Court judgment in this case which supplants the Probate Court decree, both cases (unlike Kleinman v. Marshall, 192 Conn., supra) involve a dispute other than one merely between heirs and fiduciary; that is, both Kerin and this case involve an independent third party claiming a right to purchase land as a result of negotiations with the conservator of a now deceased ward's estate. The language of our Supreme Court inKerin is clear that given the factual circumstances of that case, the conservatorship terminated on the death of the incapable, there remained no conservator against whom the Superior Court appeal could proceed, and there was no longer any interest in the real estate for the conservator to convey; accordingly, in Kerin the remanded appeal was rendered moot. It would seem that the same principles also have relevance in the circumstances of the present case.
General Statutes Section 45a-660(a)(3) (formerly Section 45-77) is cited both in Kerin and in Kleinman v. Marshall with respect to the conservatorship terminating upon the death of the incapable person. Additionally, both cases refer to the principle recited in Satti v. Rago, 186 Conn. 360, 365 (1982): "Title to real property passes upon death to the heirs of the owner subject to the right of administration." In the present case, as in Kerin, there is neither a neither a conservator to convey, nor realty to be conveyed, from an incapable's estate. Plaintiff, however, maintains that for purposes of continuation of this appeal, the executor of the decedent's (Mrs. Olyphant's) estate could be substituted as a party defendant[8], and the litigation would proceed with parties adversely positioned; plaintiff's contention is largely premised on the concept set forth in Bowne v. Ide, 109 Conn. 307,315 (1929) (and on General Statutes Section 45a-325) that the estate of an owner of real estate under contract of sale, under the doctrine of equitable conversion, becomes in equity an estate in personalty and in case of his death before the contract is performed, or fully performed, the contract and the proceeds thereof are personal property or assets in the hands of the administrator.[9] With regard to mootness, however, it is significant that the subject property (Mountain Spring Road) is not under contract to plaintiff, that is, plaintiff corporation has, and had, no enforceable contractual interest in the subject real property which survived the death of the incapable person. To the contrary, Mrs. Olyphant's interest in the Mountain Spring Road property was subject to CT Page 13931 a Probate Court approved contract of sale to Mrs. Wand, Mrs. Case is the devisee under her mother's will, and the interests of Case and Wand are not, and never have been, hostile. Since plaintiff corporation has no contractual interest in, or contractual rights with respect to, the subject acreage, and as the conservatorship has ended by virtue of the ward's death, and since the interest in the land is no longer held in conservatorship, and as Mrs. Case wishes the conveyance of the land to Wand at the contracted purchase price of $350,000, there remains no object of this litigation: by reason of Mrs. Olyphant's death, the interest in the land is no longer a part of a conservatorship estate, there is no conservator, no ward, and it is Mrs. Case's wish that the land be conveyed to Mrs. Wand, which is consistent with the contract for which the conservator had obtained Probate Court approval.
On an appeal from a decree of Probate Court, the Superior court takes the place of, and sits as, a court of probate;Kerin v. Stangle, supra; Satti v. Rago, supra; the Superior Court exercises the powers of a probate court and takes jurisdiction of the decree appealed from, trying the issue presented de novo. Id. Regarding conservatorships, "[t]he performance of all of the conservator's official duties come under the supervision and control of the Probate Court," and, the conservator is charged with the responsibility of managing all the estate of the ward and applying so much of the net income, and, if necessary, the principal toward the support and maintenance of the incapable person. Marshall v.Kleinman, 186 Conn. supra at p. 69. The conservator owes a fiduciary duty to the ward, and "the Probate Court has an affirmative duty to protect the ward's assets." Id at p. 70. The Supreme Court has stated:
 "The purpose of a conservatorship is to make necessary provision for the incapable person . . . A conservator of an estate owes a duty of loyalty to a ward . . . The Probate Court `is primarily entrusted with the care and management of the ward's estate . . .'"
186 Conn. supra at p. 65.
General Statutes Section 45a-164(a) permits the Probate Court to enter a decree authorizing the sale of real property under conservatorship upon a finding that it would be for the best CT Page 13932 interests of the parties in interest; on appeal from the decree of the Probate Court, the Superior Court "makes an independent determination . . . pursuant to an affirmativeduty to protect and preserve the assets of the ward."
(Emphasis added). 186 Conn. supra at p. 65-66. But, in the case at bar, there is no ward or incapable. Therefore, on the issue of the present mootness of this appeal, analyzed in terms of the aforestated principles, the Superior Court, if the appeal proceeds, would act de novo as a Probate Court and determine whether to enter, or uphold, a decree authorizing a conveyance to Mrs. Wand; but, given Mrs. Olyphant's demise, there is no longer a ward for whose benefit the Probate Court (or the Superior Court acting in its stead) now has anaffirmative duty to protect and preserve assets. Rather, the conservatorship has now terminated and the land is no longer held in conservatorship. In sum, the Superior Court, if it sat as the Probate Court, would be required to determine whether the sale to Wand was in the best interest of the ward; but now, there is no conservator, and there is no ward. In the factual circumstances of this case, it would appear to this court that the language of Kerin has applicability. (209 Conn. supra at p. 266-67).
It is this court's view that defendants' analysis of the consequences of proceeding with this appeal is correct; they point out that whatever the Superior Court's ruling on the merits might be, it is questionable that that ruling would have any effect on the result of the dispute. If the Superior Court, sitting de novo, approved the sale of the one-half interest (that is, affirmed the decree of the Probate Court), the interest in the land would then be conveyed to Wand under the 10/27/94 purchase agreement. If, on the other hand, the court did not approve the sale to Wand (that is, reversed the decree of the Probate Court), the purchase agreement (10/27/94) would no longer have contractual force because the condition of Probate Court approval would not have been met; therefore, the land would not be under any contract, it would become part of decedent's estate, and it would pass testate to the decedent's daughter, Mrs. Case, pursuant to the Article VI devise (and Mrs. Case has continuously expressed her intention to convey the acreage to Mrs. Wand). With regard to the Superior Court ordering a sale to plaintiff, it has been emphasized that plaintiff has no signed, written, enforceable contract for the sale of real property with the conservator. Also, both the listing agreement and plaintiff's offer to CT Page 13933 purchase required probate court approval, and such approval does not exist with respect to any contractual interest in the property which conceivably might be claimed by plaintiff. Plaintiff's offer to purchase was made to the conservator, there is no longer a conservatorship (or ward), and plaintiff would not have any claim against the decedent's interest in the land because there was, and is, no statutorily and contractually required Probate Court approval of a sale to plaintiff. If the court considered approval of a sale of the real property at this point in time, under either the written contract between the conservator and Wand or plaintiff's offer to purchase, the best interests of the ward would no longer be in issue, and the court would not be acting "to protect and preserve the assets of the ward," since now there is no ward and no conservatorship.
"Whether a claim is moot or not implicates the subject matter jurisdiction of the court." Connecticut ResourceRecovery Authority v. Town of Ellington Planning and ZoningCommission, 7 CSCR 759, 760 (May 27, 1992). Therefore, mootness is a permissible basis for a motion to dismiss. Id. Courts "have consistently held that [they] do not render advisory opinions." Board of Education v. New Haven,221 Conn. 214, 216 (1992). As a result, "[i]f there is no longer an actual controversy in which [the court] can afford practical relief to the parties," the granting of a motion to dismiss is appropriate. Id.
Plaintiff corporation has no written contract with the conservator for the purchase of this land; there exists no Probate Court approval (as would be statutorily required)[10]
for a sale to plaintiff; there is no longer living a ward, whose interests the Probate Court would have an affirmative duty to protect; there no longer exists a conservatorship (or a conservator to sell the land); the deceased ward's interest has been devised;[11] and, Mrs. Case, who at all relevant times prior to the ward's death has had an undivided one-half interest in the real property, favors a conveyance of the entire interest in the land to Wand. Under the totality ofthe particular circumstances of this case, and consistent with language contained in Kerin[12], this probate appeal is subject to dismissal.
Defendants' motions to dismiss (File #106 and #108) are hereby Granted.
CT Page 13934
Mulcahy, J.