[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is an appeal from an accounting approved by the Probate Court for the District of New Haven. Thomas F. Brown an attorney admitted to practice law in the State of Connecticut hereinafter ("Brown") was appointed as attorney for respondent by Judge Keyes pursuant to § 45a-649(b)C2 for the hearing of the account filed by William Villano (Exhibit H) dated December 2, 1993. William Villano is the son of Ruth Villano who was the surviving spouse of Vincent Villano, an attorney in the State of Connecticut with whom Brown practiced law. In 1988 Vincent Villano had a heart attack. William Villano started working with his mother Ruth and Vincent Villano writing checks for her and him and assisting them in the management of the family affairs. Vincent Villano died in 1991. William Villano, is Director of Regional Work Force responsible for 7-8 million dollar budget and holds a masters degree in Urban Studies. The other sibling is a sister now married with children. Peter Villano, brother to the late Vincent Villano, now a state representative for Hamden CT Page 5163-FFF Connecticut testified as to the protective and devotion of Ruth and Vincent towards their two children. According to the testimony of Peter Villano, Vincent and his wife were generous parents making large gifts to their children. Peter was aware of the Power of Attorney held by William. Gifts to the Villano children were not tied to holidays. They helped build homes for their children and even paid their medical expenses. The practice of the family was to take care of each other. Ruth who now is in a convalescent home is visited by Peter every two months or so.
William Villano started working and writing checks for his mother in 1989. Ruth had a mini stroke in 1990 and was unable to take care of his father and he took on more responsibility of his parents affairs. William hereinafter ("William") had conversations with Brown in 1990 with his sister hereinafter ("Sandra") concerning the affairs of the parents. Brown told William they had two options (a) they could do a power of attorney or (b) conservatorship. Brown advised William that a power of attorney is less restrictive and one did not have to be declared incompetent. William and the family elected to proceed under a power of attorney (Defendant's Exhibit 3), power of attorney for Ruth dated August 6, 1990. In August 1991 Ruth had a stroke requiring her to be hospitalized. Vincent Villano died during this stroke and she went into a convalescent home leaving William to carry on her affairs. Other than his consultation with his mother Ruth he did not report to anyone.
At the time of the death of Vincent Villano, he and wife Ruth owned a single family home in Guilford, a three family house on Howard Avenue, three or four different savings accounts, stocks and bonds. The value of Ruth Villano's estate at the time of the conservatorship dated December 2, 1993 is $1,139,289.44 (Exhibit H). William testified that Brown failed to advise him as to his conduct or record keeping under the power of attorney that was prepared by Brown in his capacity as an attorney at law in the State of Connecticut. William's only understanding as to record keeping was for income tax purposes only. He did not retain bills for which he wrote checks to pay from the accounts of his mother.
On April 6, 1993 Brown made application for his appointment of conservator (Exhibit B) describing himself as attorney and named Executor under Will of Ruth Villano. After due hearing the Probate Court made the following order (see Exhibit E).[1]
In the decree of appointment of the conservators (Exhibit F) CT Page 5163-GGG the court found that "the respondent was unable to request or obtain counsel and the probate court [sic] appointed an attorney to represent the respondent". Exhibit G Appointment ofRepresentative for interested Party (PC-182) Rev. 10/91 provides the following:[2]
The defendants in this case have renewed their motion to dismiss on the issue of standing previously denied. (Pleading No. 103). Notwithstanding argument of counsel for defendants this court denies the claim of the defendants based upon two unique facts. The Probate Judge ("Keyes") testified to the authority of the appointment and the appointment note (Exhibit G). Also see reasoning in Cottrell v. Connecticut Bank Trust Co., 175 Conn. 261. The appointment of a guardian ad litem rather than as attorney representative is at best a technicality without substance and if a defect is procedural in nature.
On February 2, 1994 (Exhibit I) Brown filed his objections to the accounting with the Probate Court along with a motion for removal of the appointed conservators. Contained in said report at page 4 Brown raises the objections to the accounting Exhibit H. All other information in said report goes only to the issue of removal of the conservators which this court is not compelled to address in this appeal. The report however seethes with venom towards the children of Ruth Villano to persuade the probate court to act favorably on his motion for removal.
The probate court's decision dated March 1, 1994 approved the account Exhibit H.
Brown appealed the order of the Probate Court decree namely.
 "The account is hereby approved and the following orders shall enter:
 A. The Co-conservators shall file under oath a statement of all personal articles of the Ward; and
 B. The Co-conservators shall pursue, if in the best interest of the Ward a single room for the Ward, and report to the Court."
In Andrews v. Gorby, 237 Conn. 12 at page 16 the court stated in the absence of a record the Superior Court is required to hold a trial de novo. In this case no record was made in the Probate CT Page 5163-HHH Court so this court hears this matter de novo. At the outset however this court must question a serious conflict which Brown may have in representing Ruth Villano. Brown who acted as attorney for William Villano in drawing the original power of attorney failed to advise Villano of his responsibilities which he now claims to have been unfulfilled. In Andrews v. Gorby,
supra, at page 20 the court stated:
 "The judicial system has a significant interest in regulating attorneys and the attorney-client relationship. . . .In so doing, courts have been mindful that the relationship between an attorney and client must involve personal integrity and responsibility on the part of the lawyer and an equal confidence and trust on the part of the client. . . . The relationship between an attorney and his client is highly fiduciary in its nature and of a very delicate, exacting, and confidential character, requiring a high degree of fidelity and good faith." (Citations omitted; internal quotation marks omitted.) Matza v. Matza, 226 Conn. 166, 183-84, 627 A.2d 414 (1993).
The court does not have this issue of removal of Brown from his representation before it only as a claim of conflict raised by the defendants in their post trial brief that Brown represented the co-conservators in other matters. More importantly there was testimony as to regarding Brown's advice at the time of the execution of the powers of attorney.
Judge Keyes testified that a power of attorney accounting requires less precision than a conservators accounting. Both Keyes and Attorney Keith Gallant testified that a conservator is responsible for the Ward's entire estate whereas an agent, i.e., power of attorney is only expected to account for his own acts. The accounting in this case notwithstanding the claim of Brown is a Power of Attorney accounting. Gallant testified that William brought him all the records that he could locate. All checks were listed in the accounting. The court heard undisputed testimony as to what the checks were written for and as best William's recollection as to where they were paid and under what circumstances they were paid. Checks made payable to William and Sandra were at best; as William could make out paid equally to each of them which was a practice of Ruth Villano. William made repairs to the properties of Ruth in his best judgment and in accordance with what this court deems reasonable. CT Page 5163-III
In Morris Silverstein's Appeal from Probate 13 Conn. App. 45
at page 52 the court stated:
 "General Statutes § 45-288 provides that "[a]ny person aggrieved by any order, denial or decree of a court of probate in any matter . . . may appeal therefrom to the superior court. . . ." In all appeals from probate, the appellant shall file reasons of appeal. "[P]leadings shall thereafter follow in analogy to civil actions." Practice Book § 194. The nature of a probate appeal is not defined either by statute or by the rules of practice. Neither the effect by statute or by the rules of practice. Neither the effect of the appeal on the decree appealed from, nor the scope of the issues presented in the appeal, nor the powers of the appellate court, are indicated by statute or procedural rule of court. The courts, therefore, have clothed "the appeal from probate with very definite characteristics which mark it as a thing peculiar unto itself. . . ." 1 W. Locke P. Kohn, Connecticut Probate Practice § 186, p. 381. The appeal from probate does not vacate the decree appealed from, nor does it "lift" or surrender the entire matter from the Probate Court into the Superior Court for further proceedings and termination of the estate beyond the order or decree appealed from. "On the contrary, it leaves the matter as it was in the Probate Court, there to be continued with and completed according to law, presenting in the meanwhile to the Superior Court for redetermination, after a retrial of facts, the special and limited issues embraced within the particular decree appealed from. It follows that the Superior Court is without power, on appeal from probate, to proceed through all the forms of a complete settlement of the estate as a prerogative court, and may not consider or adjudicate issues beyond the scope of those proper for determination by the decree being attacked." (Footnotes omitted.) Id., § 214, p. 438.
 The judgment on appeal should affirm or reverse the decree appealed from, in whole or in part, and answer the questions raised by the reasons of appeal. Id., § 220, pp. 449-50. CT Page 5163-JJJ
at page 54 Silverstein's Appeal Id. the court stated:
 "In a probate appeal, the Superior Court cannot consider events that occurred after the issuance of the order or decree appealed from. Satti v. Rago, 186 Conn. 360, 369 441 A.2d 615 (1982). The appeal brings to the Superior Court only the order appealed from. The order remains intact until modified by a judgment of the Superior Court after a hearing de novo on the issues presented for review by the reasons of appeal. Id., 364-65. The Superior Court may not consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked. Hartford Kosher Caterers, Inc. v. Gazda, 165 Conn. 478, 486, 338 A.2d 497 (1973); Stevens' Appeal, 157 Conn. 576, 581, 255 A.2d 632 (1969). Inasmuch as the motion for the appeal is made in the Superior Court. The Superior Court, therefore, cannot enlarge the scope of the appeal. Sacksell v. Barrett, 132 Conn. 139, 146, 43 A.2d 79
(1945); Canty's Appeal, 112 Conn. 457, 458, 152 A. 585
(1930); Wildman's Appeal, 111 Conn. 683, 686, 151 A. 265
(1930)."
In the case at hand Brown attacks the acceptance of the account (Exhibit H) on the grounds set out in his reasons for appeal under paragraph 6 (Pleading #102). This court as inAndrews v. Gorby, supra adopts the standard of proof as being by a preponderance of the evidence for proof regarding a Power of Attorney accounting. In Andrews to establish the reasonableness of an attorney's fee such a standard was applied.
Accordingly, the listing of the checks under the schedule and the amounts paid have been reasonably accounted for in particular to schedule A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, and P. The requirement now as asserted by Brown to also present underlying bills and payees under the circumstances of this case would be a standard of proof beyond a reasonable doubt. The court of its own determination as required by law further finds that the Power of Attorney did in fact make payments either necessarily incurred by Ruth Villano or in her best interests or for the preservation of her estate. All the income for Ruth has been accounted for. The claim that large sums were paid for the real property is also without merit and this court finds that the agent William made necessary expenditures. As to sums paid to William and Sandra the court finds that in many instances the CT Page 5163-KKK gifts were pre-approved by Ruth based upon her prior treatment of her children and grandchildren her consent was reasonably inferred.
In Brown's Brief he points out the discrepancies he finds with listing of items in more than one place. Again this court finds that such a dissection of this accounting is without merit. Brown asserts that trier of fact may draw reasonable and logical inferences, see (Brown's Post Trial Brief p. 7). This court finds the inferences as to gifts to William and Sandra in their favor and not extraordinarily large in view of the size of Ruth's estate balanced against her present needs.
A great part of this trial was focused upon that which was presented to the probate court (Exhibit I) which particularized Exhibit H. This court of its own determination finds that the expenses contained under Exhibit I, Schedules A, B, C, D, E, F, G, H, I, J, K, L, M, although done by the efforts of Brown sufficiently described the expenses so that the Probate Court properly accepted the accounting of William.
The major dispute presented to the Probate Court and to this court also is Exhibit B attached to Exhibit I entitled ChecksWritten not accounted for. (Emphasis added).
The court heard testimony regarding this exhibit which totalled $18,245.84 from William. The court finds that the checks written in Exhibit B of Exhibit I were made in accordance with the desires of the respondent Ruth. Her prior habits, knowledge and wisdom of giving to her children equally when needed justifies approval of this accounting.
The court further finds that the $12,000 CT Muni Bonds reported in Ruth Villano Income Tax Return Exhibit C attached to Exhibit I was duly accounted for in the inventory of the Income of her accounting.
The accounting under Schedules F G have been explained by William to its satisfaction and the court finds the discrepancies asserted in paragraph 3 of Exhibit I without merit. The issue as to the transfer of the car; this court finds a valid gift to his sister after mother Ruth went to convalescent home and had no use for an automobile.
William acted with his Power of Attorney from 1989 to 1993, a CT Page 5163-LLL period of four years. Ruth was in a convalescent home for more than three years before he was called upon to account. William testified he relied upon the advice of Brown for his duties under the Power of Attorney and when called upon to now account had to reconstruct all his prior approved actions.
The court concludes by a preponderance of the evidence that the accounting of the Power of Attorney should be approved.
Accordingly, the approval of the account by the Probate Court is affirmed and the appeal from that order is denied.
Frank S. Meadow State Trial Referee